MASLOW COOPERAGE CORPORATION, Appellant, vs. WEEKS PICKLE COMPANY and another, Respondents.

*May 3—June 1, 1955.*

For the appellant there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

For the respondents there was a brief by *McMonigal & Wildermuth* of Berlin, and oral argument by *J. L. McMonigal*.

STEINLE, J.   The plaintiff is engaged in the business of buying and selling barrels, and the defendant grows pickles and processes them. It is undisputed that a representative of the plaintiff company telephoned to the defendant in April of 1953, to interest him in the purchase of distillers' barrels for use in the packing of pickles. The defendant maintains that representations and warranties were made to him at the time concerning the quality and fitness for use of the barrels which plaintiff indicated that it was able to provide for him. He maintains further that he relied upon these warranties and also upon others contained in a letter sent to him by the plaintiff dated April 17, 1953, which read:

"Marvin Weeks
"Wautoma, Wisconsin
"Dear Mr. Weeks:
    "It was nice talking with you on the telephone, and this is to confirm our quotations on a shaved, coopered, paraffined whiskey barrel (gin) at $2.65 each delivered; on a thoroughly clean, coopered, and paraffined firwood barrel at $3.40 each delivered; and on a once-used, distillery-run, fresh barrel at $1.55 each delivered.
    "We are most anxious to be of service to your account, and we might say that we enjoy a very fine reputation in the pickle trade as to service, quality, and competitive prices. We are associate members of the National Pickle Packers, and the above remarks can be verified very easily. We understand the problems of your particular industry which does

lend itself to our giving good service to both you and the other companies. We guarantee all our merchandise, and if you decide because of the difference in price, to use the shaved, paraffined whiskey barrel, you can do so without any fear of your having any complications with this barrel.

"We hope to be favored with your most valued order, and with assurance of our co-operation, we are
"Very truly yours,
"Maslow Cooperage Corp.
"s/M. Robinson"

It appears that upon receipt of this letter the defendant placed an order for 1,000 barrels. The order was confirmed in a letter from the plaintiff which read in part:

". . . this is to confirm your telephone order for 1,000 shaved, paraffined, whiskey oak barrels at $2.50 each."

Under terms of the initial order and two reorders, an aggregate of 1,779 barrels were purchased and delivered. The price was $2.50 each. The first shipment was made at the end of May, 1953, and the last on July 31, 1953. Plaintiff contends that payment was due July 31, 1953. On August 24, 1953, the defendant sent $500 on account by letter in which he also indicated an interest to purchase another carload of barrels. The plaintiff replied that it would supply additional barrels conditioned on payment in November and providing that the balance due for barrels theretofore delivered was paid before November.

On September 16, 1953, and again on October 19, 1953, the defendant wrote letters to the plaintiff promising to pay the balance of the account as requested. On November 26, 1953, the defendant by letter advised the plaintiff of his loss by spoilage of about 40 barrels of the processed pickles due to leak in the barrels. He also advised that while grading pickles, which had been packed in other of the barrels, he discovered they were soft and cheesy. He indicated a belief that alcohol in the wood of the barrels was the cause. He

suggested the plaintiff inspect the soft stock. In a letter dated December 14, 1953, addressed to plaintiff, the defendant stated that he had set aside about 275 or 300 barrels of pickles found to be soft. On December 17, 1953, the plaintiff wrote to the defendant and disclaimed liability for loss due to any condition of the barrels and demanded payment of balance due. On December 31st by letter the defendant notified the plaintiff that he had recently completed the grading of the pickles and that he had been obliged to set aside around 500 barrels in which the pickles had become soft or slippery or cheesy. He again asserted that the spoilage had resulted from alcohol in the wood of the barrels. On January 13, 1954, a New York attorney on behalf of plaintiff advised the defendant that collection proceedings would be instituted in event of continued failure of payment. On February 9, 1954, Mort Robinson, representing the plaintiff, visited defendant at Wautoma and was shown some of the spoiled pickles. Upon the trial he testified that he had examined some of the barrels at the time of the visit, but had denied that the spoilage was due to any condition of the barrels. He stated that in some of the barrels a slight char spot appeared here and there, and that in some there were little pieces of wax (paraffin). He requested payment of the balance due. On March 10, 1954, the defendant by letter demanded that plaintiff "make arrangements to pick them up [barrels], cancel my account and pay me damages to my pickles caused by these barrels."

At the trial the defendant produced evidence that many of the 1,779 barrels acquired from the plaintiff were gin barrels and not whiskey barrels; that none had been shaved so as to entirely remove the char from the interior, and that in many, the paraffin had not adhered and was lying in the bottom of the barrels. The defendant admitted that such condition was visible when opening the barrels before packing the same, and that he personally had observed it before

or at the time that his workers put in the pickles. Expert witnesses were called by both sides to testify as to the effect of alcohol from the barrels upon the pickles while being cured. This evidence was conflicting. It is clear from the answer to question 3 of the special verdict that the jury was of a mind that the presence of some alcohol in the barrels which had emitted from the staves did not cause the spoilage. There is testimony in the record that dill pickles may become spoiled for one or more of several reasons. Causes stated include such as the condition of the pickles in being hollow or water soaked prior to packing; contaminated dill weed or spices; the water used in the processing; improper composition of the brine; frost, etc. There was also testimony to the effect that the presence of char or loose paraffin in the barrels is not injurious to pickles contained therein. Several growers of pickles testified that the advantage in the use of a barrel free from char and loose paraffin is in its cleanliness,—the fact that the processor is not required to wash the pickles before marketing them. The washing entails extra time and expense.

The plaintiff on this appeal contends that there was but one issue before the court and jury, and that, whether the presence of alcohol in the barrels emanating from the staves, caused the spoilage of the pickles. Plaintiff argues that since this question was decided adversely to the defendant, the court was obliged to have rendered judgment in plaintiff's favor for the full amount of the contract price of the barrels, less payment on account. Plaintiff maintains that by answer to question 1 of the special verdict it may not be considered that there was a finding of breach of warranty of quality and suitability, and further, that although breach of warranty in such particulars may have been intended by the court in the answering of the question, there is no credible evidence to sustain such finding. Plaintiff points out that the defendant had ample opportunity to examine the barrels at the time of

delivery, or at least when opening the same preparatory to packing in July, and in fact did so, but never complained in regard to such particulars and failed to serve notice as required in sec. 121.49, Stats., which provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

Plaintiff also contends that the notice given on November 26, 1953, pertained to the claim for damage resulting from spoilage; that it was such claim that was rejected by the jury; and notwithstanding that by such notice the defendant may have intended to apprise the plaintiff of a claimed breach of warranty of quality and suitability, nevertheless the notice was not timely in view of the four-month delay, and actually was unreasonable and invalid under rulings of this court as appear in such cases as *Tegen v. Chapin* (1922), 176 Wis. 410, 187 N. W. 185, and *Wood v. Heyer* (1923), 179 Wis. 628, 630, 191 N. W. 971. The plaintiff also maintains that under provision of sec. 115.04, Stats., it is entitled to interest at the rate of five per cent upon the full balance due from November 1, 1953.

The defendant contends that all of the essential elements for rescission of the contract were pleaded in the answer, and established by the evidence. He submits that the answer alleges that the barrels were sold upon an express warranty of kind, quality, condition, and fitness for use; that the barrels when delivered were not as warranted; that due notice of the breach of warranty was given, and that redelivery of the barrels was tendered. It is his position that the counter-

claim covered the spoilage claim under a separate warranty extended by the defendant, and concedes that there is ample evidence of record justifying the jury's rejection of that particular claim. However, with reference to the defense alleged in the answer, the defendant maintains that the trial court erred in determining that the defendant had not made a sufficient offer to return the barrels, and further, that the court incorrectly considered that the subsequent sale by the defendant of some of the barrels constituted a waiver or loss of rescission. As to the latter of these contentions, the defendant relies on sec. 121.69 (5), Stats., which provides:

"Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section 121.53."

The defendant argues that since $500 was paid on the contract price, he was entitled when rescinding to retain possession under sec. 121.69 (5), Stats., in order to protect his lien right as provided under that statute. As to his claim for rescission, the defendant submits that the notice given on November 26th was timely as was also the offer to return the barrels. He contends that under the pleadings and the evidence he was entitled to a dismissal of the complaint.

The trial court was of the opinion that the evidence had not established a valid rescission of the contract. It found that a breach of warranty of kind and quality had been established, and that the notice of November 26, 1953, was timely in so far as it advised the plaintiff of such claim.

The court was also of the opinion that each barrel furnished to the defendant was worth only the price of the type

of barrel originally quoted for sale at $1.55 each, and directed judgment for damages upon that basis. Credit for the payment of $500 was given. Interest was not allowed.

Since there is no challenge of the finding that spoilage did not result from breach of warranty, we are not concerned with that matter in our considerations here.

The burden of proof rested upon the defendant to establish the breach of warranty as to kind and quality of the barrels furnished, and also as to the damages flowing from such breach.

In this state under the Uniform Sales Act, two of the several remedies available to a buyer upon breach of warranty are: That the buyer may at his election accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price, sec. 121.69 (1) (a), Stats.; and, that the buyer may at his election rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid, sec. 121.69 (1) (d).

With reference to the defendant's claim that he had rescinded the contract, the trial court found that having sold some of the barrels before the tender of return was made, the defendant was not in a position to have returned all which had been furnished by the plaintiff, and hence an effective rescission was impossible. There is no evidence indicating that the defendant when tendering a return of the barrels had offered to compensate the plaintiff for the barrels which the defendant had sold. In *Wilson v. Solberg* (1911), 145 Wis. 573, 130 N. W. 472, where shoes delivered by the seller were not as warranted, the buyer upon discovery of the breach of warranty offered to return the balance of the shoes on hand and the money received for that quantity of the

shoes which he had already sold. Such offer was deemed valid. In the case at bar the omission to compensate for the barrels sold was fatal to an effective rescission.

We are of the opinion that the court's determination to the effect that the defendant's attempt at rescission was ineffective, is correct. The right to rescind must be exercised *in toto*. 12 Am. Jur., Contracts, p. 1027, sec. 444. A party who wishes to rescind an agreement must place the opposite party in *status quo*. 12 Am. Jur., Contracts, p. 1031, sec. 451; 17 C. J. S., Contracts, p. 919, sec. 438; *Mueller v. Michels* (1924), 184 Wis. 324, 197 N. W. 201, 199 N. W. 380. Offer to return *in toto* is a condition precedent to right of lien under sec. 121.69 (5), Stats.

The court determined that there had been a breach of warranty with reference to the kind and quality of barrels delivered, but indicated that the evidence adduced with reference to the damages sustained as a result of such breach was meager. It appears that the court was of the opinion that the buyer had complied with sec. 121.49, Stats., with respect to timely notice of the breach of warranty.

Sec. 121.69 (6), Stats., provides that:

"The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."

In *Dunck Tank Works, Inc., v. Sutherland* (1940), 236 Wis. 83, 86, 294 N. W. 510, the evidence established that four pressure tanks were purchased for $1,500 and when delivered were not as warranted in that they were porous; that they could be used only for storage purposes; and that for such use they were worth $800. The buyer was held accountable only for the payment of $800. The court held: "The correct measure of damages is the difference between the contract price and the actual value of the tanks at the time

of delivery." The same measure of damages applies to the instant situation with reference to the barrels. The burden of proof to establish the damages rested on the defendant. Damages must be proven with reasonable certainty. An award of damages cannot be based on conjecture. 25 C. J. S., Damages, p. 816, sec. 162 (2). Where damages are susceptible of precise proof, or of estimation by those having knowledge, or are capable of proof with certainty, such proof must be adduced. 25 C. J. S., Damages, p. 818, sec. 162 (2). The trial court found that the barrels which had been delivered were not worth the contract price of $2.50 each, but were on a par with barrels that were not scraped or paraffined and for which the plaintiff had quoted a price of $1.55, and that such was their value. Evidence most favorable to the defendant indicates that of the 1,779 barrels delivered, 10 or 12 had not been scraped, although they had been paraffined; that a large part of the others, while scraped, contained some char, although these too had been paraffined; and that only five per cent of all the barrels furnished were completely free from char and were paraffined. The evidence also shows that loose paraffin in varying quantity was found in many of the barrels. Despite this showing, it is clear that none of the barrels delivered to the plaintiff were in the $1.55 category of entirely unscraped and entirely unparaffined barrels. The defendant had failed to establish that the value of the barrels purchased was less than the contract price. Special damages have not been established. The record is barren of any evidence of cost of "washing" the pickles due to impurities in the brine from char or paraffin. There is no evidence of cost of repairing the 40 barrels that leaked, nor of the cost of scraping, if any, of the barrels which contained quantities of char, nor of reparaffining, if any such was done. The defendant used the barrels which had been supplied. His proof failed to establish that his loss from spoilage was due to the

condition of the barrels. There is no evidence to indicate loss of profit, if any, which he would have sustained had the pickles not spoiled and had they been packed when marketed in the barrels as furnished instead of in barrels containing no char or loose paraffin as ordered. The evidence indicates that the defendant sold a quantity of these barrels to his son-in-law at $1.25 apiece, and that these were used subsequently for packing pickles other than dill pickles. There is no proof as to the number so sold. We are not able to concur in the determination of the trial court with respect to the amount of damages adjudicated. Since the defendant failed to establish with reasonable certainty a value less than the contract price, the plaintiff is entitled to recover the amount agreed upon.

Time for payment of the contract price had not been discussed between the parties when the order for the barrels was placed and accepted. The last delivery was on July 31, 1953. Part payment of $500 was made on August 24, 1953, although demand for payment had frequently been made previously. On August 27, 1953, the plaintiff acknowledged receipt of the partial payment and expressed a willingness to furnish additional barrels for which payment could be made in November, providing the balance of payment for barrels shipped up to July 31, 1953, was paid prior to November 1, 1953. In motions after verdict plaintiff sought interest from November 1, 1953. It now contends that interest must be allowed from July 31, 1953. The trial court had allowed no interest.

The general rule is that in the absence of agreement to the contrary, liquidated damages bear interest, whereas unliquidated damages do not. 47 C. J. S., Interest, p. 28, sec. 19a; *Beck Investment Co. v. Ganser* (1951), 259 Wis. 69, 72, 47 N. W. (2d) 490. In order to recover interest there must be a fixed and determinate amount which could have

been tendered and interest thereby stopped; the amount of the claim must be known and determined, or readily determinable. 47 C. J. S., Interest, p. 30, sec. 19b. Ordinarily, where the amount of a demand is sufficiently certain to justify the allowance of interest thereof, the existence of a setoff, counterclaim, or cross-claim which is unliquidated will not prevent the recovery of interest on the balance of the demand found due from the time it became due. 47 C. J. S., Interest, p. 31, sec. 19b. See also Anno. 3 A. L. R. 809.

The amount due under the contract was fixed and determinate. Interest could have been chargeable from the time of the demand. The plaintiff, however, chose to fix the due date for payment of the balance of $3,947.50 as November 1, 1953. Had such balance been paid at that time then obviously the plaintiff would not have claimed interest. The plaintiff is bound by its overture which defendant impliedly accepted. We are constrained to hold that the plaintiff is entitled to damages in the sum of $3,947.50 with interest at five per cent from November 1, 1953, and costs.

The judgment with respect to the item of damages shall be modified in accordance with this opinion. As so modified, the judgment is affirmed.

*By the Court.*—The judgment appealed from is modified so as to increase the amount recoverable to $3,947.50 with interest from November 1, 1953, and, as so modified, is affirmed.