De Sombre, Respondent, v. Bickel, Appellant. [Case No. 68.]

Bickel, Appellant, v. Edgar Stubenrauch & Associates, Inc., Respondent. [Case No. 69.]

*November 27, 1962—January 8, 1963.*

For the appellant there was a brief by *Holden & Peckham* of Sheboygan, and oral argument by *Verlin H. Peckham*.

For the respondent Earl F. De Sombre there was a brief by *Clemens, Miller, Hayes & Werner* of Sheboygan, and oral argument by *John M. Hayes*.

For the respondent Edgar Stubenrauch & Associates, Inc., there was a brief by *Humke, Poole & Axel* of Sheboygan, and oral argument by *John M. Poole*.

HALLOWS, J.   Appellant complains of the following defects and faulty workmanship: Failure to provide slip-expansion joints on the fascia; the using of one-inch-square tubing instead of wrought-iron three-quarter-inch bars on the metal railing of the roof; failure to paint the underside of all tin and galvanized-metal work; failure to provide a gravity-type screened vent above the roof; failure to design the roof to provide sufficient ventilation to prevent condensation; construction of a window on the first floor of the building so it did not open; designing of the building so an interior partition wall abutted the window and could be seen from the outside; failure to soundproof certain interior walls; raising the elevation of the building 11 inches higher than originally planned, and failure to complete the first floor of the building for occupancy by October 1, 1959.

Relying on *Plante v. Jacobs* (1960), 10 Wis. (2d) 567, 103 N. W. (2d) 296, the appellant claims the contractor did not substantially perform his contract, especially in reference to the failure to soundproof certain interior walls in accordance with the plans and specifications. In the *Plante Case,* we stated substantial performance as applied to the construction of a house did not mean every detail must be in strict compliance with the plans and specifications and something less than perfection was the test unless all details were made the essence of the contract. We also pointed out there may be situations in which some features or details of construction were of such special or great personal importance that if not strictly performed would prevent a finding of substantial performance of the contract. In the instant case, specifications for several interior walls called for sound-

proofing "equal to Balsam Wool." This required 2x4 studding to be staggered and the blanket type of acoustical insulation to be woven in and out of the studding. Instead of this, the contractor used 2x6 studs and did not stagger them. This defect was noticed by the architect on August 10th prior to the completion of the walls. The contractor completed the walls by putting a blanket of felt over the studding before putting on rock lath and plaster. At a meeting of the owner, contractor, and architect on October 20th, it was decided to fill the space between the studding of the then completed walls with a granulated insulation called "Zonolite."

There is evidence to the effect the acoustical properties of the wall as finally constructed were the equivalent of a wall built according to the plans and specifications. The owner intended this building to be a multipurpose building and the building was planned and constructed so it could be converted into apartments. The soundproofed wall on the first floor divided future apartments. The failure to follow the plans and specifications in view of the corrections used and the result obtained cannot be said to amount to a failure to substantially perform the contract within the rule of the *Plante Case*. The means of soundproofing was not as important as the end sought to be attained. Soundproofing equal to that provided by Balsam Wool was achieved. The owner received a building substantially for which he contracted and fit for the purposes and uses he expected to make of it. Much-more compliance is found in this contract than was found in the *Plante Case*.

It is argued that slip-expansion joints were omitted from the metal flashings. The contract provided for copper flashings, fascias, and copings with slip-expansion joints and for an alternative substitution of tin and galvanized iron. The appellant chose the alternative and saved some $440. There

is testimony copper expands one and one-half times more than galvanized iron and while expansion joints are used with copper, they are not usually provided or needed with galvanized iron flashings and fascias. The trial court was not in error in finding no breach of the contract.

The specifications required the metal railing on the roof to be wrought-iron three-fourth-inch bars welded. Instead of this, one-inch-square tubing was used. There is a dispute over the meaning of wrought iron. Assuming this to be a minor breach of the contract, no damages were proven because of the substitution.

All tin and galvanized-metal work was to be painted on the underside with iron mineral paint, which was not done. It is claimed the paint on the metal work is peeling off because there was no undercoating. Damages of $15 were proven and allowed by the trial court. The appellant claims this is not sufficient compensation but under either the cost-of-repair or the diminished-value rules there is no proof of damages in excess of $15.

The appellant claims the ventilator on the roof above the dry-cleaning unit was not an approved-type gravity ventilator, but rather a cap on a ventilator with no screen. There is dispute in the evidence whether the ventilator supplied complied with the plans and specifications. The cost of replacing this ventilator with one acceptable to the appellant was not proven.

The trial court held there was no delay in the completion of the first floor of the building by October 1st for which the contractor was responsible and time was not of the essence of the contract. The contract provided the construction work should be substantially completed by October 1st and "the first floor to be finished first and must be fully ready for occupancy by October 1, 1959." The appellant could not occupy the first floor until the end of November and suffered damages of $250 because of the delay. It is

claimed one week's delay was caused by a sewer problem, one month because a boiler was not delivered, and two weeks by summer storms. We can agree that time was not of the essence of the contract. The mere stating of a date for performance is not sufficient to make time of the essence. *Buntrock v. Hoffman* (1922), 178 Wis. 5, 189 N. W. 572; *Rottman v. Endejan* (1959), 6 Wis. (2d) 221, 94 N. W. (2d) 596. That is immaterial since the appellant is not attempting to rescind the contract. When time is made of the essence of the contract, either by its terms or by the conduct of the parties, late performance does not fulfil the requirements of the contract and gives rise to a right in the innocent party to rescind the contract or relieves him from performance. Here the doctrine of substantial performance is applicable. A promisor may be liable in damages for late performance amounting to substantial performance even though the promisee has no right to avoid his own obligation on the contract. 9 Am. Jur., Building & Construction Contracts, p. 36, sec. 48; 12 Am. Jur., Contracts, p. 912, sec. 349.

A delay which is not the fault of the promisor does not necessarily relieve him from liability for damages. Parties may contract with reference to supervening difficulties. The wording of this contract in the light of accompanying circumstances manifests an intention the first floor of the building would be fully completed and ready for occupancy on October 1st although the building as a whole might not be substantially completed. We are unable to read into this contract an implied condition qualifying the contractor's promise of performance because of matters beyond his fault or control. Delays by the other contractors and weather were matters to be anticipated. We view this case as one of unanticipated difficulties which do not relieve the promisor rather than of supervening impossibility which would. See Restatement, 2 Contracts, p. 882, sec. 467, especially

illustration 2, p. 883, and p. 849, sec. 457. The appellant was entitled to damages of $250 against the contractor De Sombre for the delay.

In Case No. 69, involving the architect, the trial court held the architect was not negligent in supervising the construction of the building or in designing it. It was established by the evidence that condensation formed and leaked into one of the rooms and if more ventilation between the roof rafters had been provided, this would not have happened. The design of the roof, however, was held by the trial court to be proper. The appellant also claims a window on the west side of the building could not be opened and a partition of an interior wall overlapped or could be seen through the window. This detail of construction was shown on the blueprints. We do not, however, believe this to be significant because a lay person cannot be expected to be able to read blueprints and thereby estop himself. The evidence supports the trial court's finding this design was proper and used in this type of building. Much of the record is taken up with testimony concerning the necessity of constructing the building 11 inches higher in elevation than originally planned due to the depth of the city sewer. The evidence is conflicting and we cannot find the trial court's findings in favor of the architect were against the great weight and preponderance of the evidence.

The appellant strenuously argues the architect was negligent in failing to properly supervise the construction of the building. The evidence shows there was more supervision than usual in contracts of this type in the Sheboygan area. However, such supervision does not excuse the architect in allowing the interior walls which were to be soundproof to be built by the contractor as they were. Regardless of the amount or frequency of inspection, an employee of the architect did notice the noncompliance with the specifications by the contractor.

The main difficulty with the appellant's case is the lack of proof of damages resulting from the various breaches by the contractor and the architect. Except in the instances noted, the appellant did not prove either the cost of repairs for the various defects or the difference in value of the building as it was constructed and as it should have been constructed in accordance with the plans and specifications. The general principle regarding the measure of damages for defects and omissions in the performance of building contracts is simply that the party is entitled to have what he contracts for or its equivalent. What may be an equivalent depends upon the circumstances of the case. Some of the items, such as the soundproofing of walls, the ventilator, railings, in this case were held in effect to be the equivalent. Where defects are such that they may be remedied without destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent is sometimes held to be the cost of making the work conform to the contract. However, as pointed out in the *Plante Case* where, in order to conform the work to the contract requirements, a substantial part of what has already been done must be undone and the contractor has acted in good faith as found in this case, the owner is not permitted to recover the cost of making the change under the cost-of-repairs rule but his damages are confined to a recovery of the difference in value.

The appellant argues the difference in value of the building was a jury question and to have adduced testimony as to this difference would be invading the province of the jury. There is no merit in this argument. Neither a court nor a jury as the trier of the facts can determine damages by speculation or guesswork. The trier of the fact may make a reasonable estimate of the damage based on relevant data and evidence, but such evidence is lacking in this case. Damages must be proven with reasonable certainty. *Maslow*

*Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 70 N. W. (2d) 577. True, some type of damage is difficult of proof but the difficulty does not excuse the failure to put into evidence some reasonable basis of computation. 25 C. J. S., Damages, p. 817, sec. 162 (2). See also *Eastman Kodak Co. v. Southern Photo Materials Co.* (1927), 273 U. S. 359, 379, 47 Sup. Ct. 400, 405, 71 L. Ed. 684.

The last contention of the appellant concerns the number of peremptory challenges. Each of the parties was given three challenges. Relying on sec. 270.18, Stats., appellant claims he was entitled to three for each action as the two actions were combined for the purpose of trial only. We point out a distinction between the consolidation of two cases for the purpose of trial only and the situation contemplated in sec. 269.05, where two or more actions, which might have been joined, are consolidated into one action. Where actions are consolidated for trial they continue their separate existence and separate judgments are entered. Under sec. 269.05 the two actions become one action. This distinction became immaterial in this case because at the close of the trial the parties waived the jury. The question of the number of challenges thereby became moot. We have given consideration to the other questions raised by the appellant in his brief, but in view of the disposition of this case, they need not be discussed.

*By the Court.*—The judgment in Case No. 68 is modified by reducing it by the further sum of $250 and, as so modified, affirmed; no costs on appeal to be taxed by either party. The judgment in Case No. 69 is affirmed; costs to be taxed by the respondent.