SEIDLING, Respondent, v. UNICHEM, INC., Appellant.

*No. 131. Argued October 5, 1971.—Decided November 2, 1971.*
(Also reported in 191 N. W. 2d 205.)

For the appellant there was a brief and oral argument by *D. M. Oberbreckling* of Sussex.

For the respondent there was a brief by *Raymond C. Johnson* and *Adler, La Fave & Johnson,* all of Eau Claire, and oral argument by *Raymond C. Johnson.*

ROBERT W. HANSEN, J.   In order to establish a breach of contract sufficient to constitute repudiation of the entire agreement the nonperformance must be substantial and the breach so serious as to destroy the essential objects of the contract.[1]   We have no difficulty in affirming the trial court finding that there was a substantial nonperformance of the distributorship agreement on the part of the defendant corporation.

The trial court found that the plaintiff did not receive any of the flyers, bumper stickers, display stickers, mis-

[1] *Appleton State Bank v. Lee* (1967), 33 Wis. 2d 690, 692, 693, 148 N. W. 2d 1.

cellaneous forms, order book and training manual, all of which the defendant corporation was obligated to furnish plaintiff under the distributorship agreement. Additionally, the trial court found that both training and assistance were assured plaintiff under an independent collateral agreement which became part of the agreement of the parties. Whether an entire contract was reduced to writing or an independent collateral agreement was made was here an issue of fact for the judge to determine.[2] Where the written agreement gave an exclusive distributorship but did not set forth the duties of either party, an incompleteness is evident. The president of defendant corporation testified: ". . . the investment Mr. Seidling made covered a great deal more than just merchandise. . . ." That such training and assistance were important to the essential objects of the contract is clear. The plaintiff, tired of the delay in the delivery of the promised materials, asked an agent of defendant to let him pick them up and go out alone to place the product for sale. This message was relayed to the president of defendant corporation and he testified that he replied: ". . . I told him absolutely not—that he should go out with him. I'd rather wait a week or ten days or two weeks rather than have the man going out alone. The chances of him being successful—he has a ten percent chance of failure if he doesn't understand this. . . ." No one did go out with the plaintiff. No training or assistance was given him. This clearly constituted a substantial failure of performance on the part of defendant corporation.

The trial court found that notice of intention to rescind the contract was given defendant corporation by plain-

---

[2] ". . . The question whether an entire contract was reduced to writing, or an independent collateral agreement was made, is one of fact . . . if there is any evidence to sustain such parol agreement. . . ." 53 Am. Jur., *Trial*, p. 221, sec. 262.

tiff, and, while the finding is challenged, we find it clearly supported by the evidence. The trial court found that ". . . the facts are such that rescission might be had. . . ." At this point in the opinion, the trial court stopped short. Instead of granting judgment on the basis of rescission, and seeking to place the parties in the position in which they were at the time of making the distributorship agreement, the trial court turned to a penalty clause in the agreement. It provided that $199 shall be considered as liquidating damages should either of the parties ". . . fail to comply with above 'Compliance Clause.' " That compliance clause provided for the 50 cases, 50 display stickers, etc., to be delivered by defendant within thirty days. The trial court found that failure of defendant to comply with the compliance clause made the penalty claims effective. Judgment was entered for $796—the $995 paid by plaintiff, *minus* the $199 liquidated damages. The trial court conceded that this "end result seems at first blush rather odd."

Two eggs are scrambled to make one omelet in this computation of damages. There are two possible remedies which should be separate and distinct. If the contract remains in force, the plaintiff continues as distributor for defendant corporation and keeps the merchandise delivered to him; the defendant company keeps the $995, less the $199 liquidated damages the penalty clause would require the defendant to pay to the plaintiff. If the contract is rescinded by reason of substantial nonperformance, the plaintiff is not the distributor of defendant's product; he recovers his $995 payment, and returns the merchandise sent to him. In rescission, the penalty clause perishes with the document of which it is a part.

Here the opinion made no mention of return of the merchandise, the 50 cases of Fountain Blue, but the trial judge in a letter indicated he had intended to order its

return. Even that would not unscramble the eggs mixed by commingling the remedy upon rescission and the result of enforcing the contract. The bad egg in the omelet would remain: the imposition of liquidated damages upon the party who was injured by the other party's violation of the contract. There is no view of the case which can justify making plaintiff pay for defendant's breach.

While this point is not raised or argued by either party on this appeal, we find both error and miscarriage of justice in commingling inconsistent theories—rescission and enforcement of a contract—in determining the basis for a money judgment. However, the initial error in this case came earlier when the trial court found that "the facts are such that rescission might be had," but did not grant it. Plaintiff's first demand was for rescission. A defrauded party has the election of either rescission or affirming the contract and seeking damages.[3] Where both the overwhelming weight of the evidence and the finding of the trial court establish a case for rescission in an action for rescission, rescission is the remedy to be granted. Where, as is the case here, nonperformance was substantial and the breach one that destroyed the essential objects of the contract, a judgment of rescission is required where that is the relief plaintiff requested.

The judgment in favor of plaintiff being or becoming a judgment of rescission of contract, it follows that each party is to return to the other such benefits as have accrued to them under the contract.[4] The effect of rescission is to restore the parties to the position they would have occupied if no contract had ever been made

---

[3] *Schnuth v. Harrison* (1969), 44 Wis. 2d 326, 337, 171 N. W. 2d 370.

[4] *Carpenter v. Mason* (1923), 181 Wis. 114, 116, 193 N. W. 973.

between them.[5] So the plaintiff is entitled to the return of the $995, paid by him to defendant. The defendant is entitled to the return of the 50 cases of Fountain Blue it sent to plaintiff. Since one of the cases (12 units) had been sold, and cannot be returned, the cash value of such case ($16.80) is to be paid to defendant by plaintiff.[6] The liquidated damage under the contract provision is nonapplicable because the entire contract is rescinded, not a part of it.[7] So the judgment is reversed and the cause remanded to the trial court with directions that judgment be entered on behalf of plaintiff in the amount of $995, ordering plaintiff to return all cases of Fountain Blue in his possession, with a $16.80 per case credit on the judgment for each case sold or not returnable. While this is a reversal under sec. 251.09, Stats.,[8] it is a reversal in form and an affirmation in substance of the position taken by respondent on this appeal. So costs are ordered awarded to respondent.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff pursuant to this opinion.

---

[5] *Schnuth v. Harrison, supra,* at page 339.

[6] *See: Maslow Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 190, 70 N. W. 2d 577, holding there can be no rescission unless there is compensation for merchandise which cannot be returned.

[7] *First Wisconsin Nat. Bank v. Pedley* (1932), 208 Wis. 628, 635, 242 N. W. 512.

[8] Sec. 251.09, Stats., provides: "**Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment . . . as shall be deemed necessary to accomplish the ends of justice."