S & S TRUCKING, a South Dakota corporation, Plaintiff and Appellant,

v.

WHITEWOOD MOTORS, INC., Myrl Williamson and Don Williamson, Defendants and Appellees.

Nos. 14104, 14106.

Supreme Court of South Dakota.

Argued Jan. 16, 1984.

Decided Feb. 29, 1984.

Laurence J. Zastrow of Carr, Zastrow & Pluimer, Belle Fourche, for plaintiff and appellant.

Charles A. Wolsky of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for defendants and appellees.

DUNN, Justice.

This is an appeal from a judgment of the circuit court holding that both parties to a lease breached the lease and awarding damages to both parties. We affirm.

S & S Trucking (S & S) is the owner of Colony Truck Stop, located on Highway 212 west of Belle Fourche, South Dakota. Because of financial losses from the operation of this portion of their business, S & S sought to lease the truck stop. Following negotiations with Whitewood Motors (Whitewood), a lease was drafted by an attorney for S & S, under which Whitewood was to operate the truck stop as lessee.

The term of the lease was five years, beginning on April 11, 1979, with an option for an additional five-year term. Under the lease, S & S was to have the first option of hauling all the fuel to the truck stop; the fuel price charged by S & S to Whitewood was to be the current price of the supplier, plus trucking costs and rental.

Approximately two months after the parties entered into the lease, an employee of S & S informed Whitewood that S & S was charging more for fuel than was agreed upon in the lease. The overcharges included a markup by S & S on the fuel price over the amount it had paid the refiners. Also involved was S & S's billing of Whitewood for extra gallons that were really only an expansion of the fuel between the refinery and truck stop due to differences in temperature. Over the next few months, Whitewood demanded an end to the overcharging, but S & S refused. So, on February 19, 1981, Whitewood notified S & S that it was terminating the lease, effective that day.

S & S filed suit, seeking to recover for fuel delivered and rental under the lease. Whitewood counterclaimed, seeking recovery for overcharges, undelivered fuel, lost profits, value of inventory, and for nonpayment for fuel sold from back tanks at the truck stop. The trial court found that both parties had breached the lease and were entitled to damages.

S & S raises four issues on appeal: 1) Was the term "supplier," as used in the lease agreement, intended to identify Mobil Oil Corp. and Wyoming Refining Co.? 2) Did the trial court err in sustaining Whitewood's objections to testimony of an expert as to customary practices in the petroleum marketing business? 3) Is S & S, as a result of Whitewood's termination of the lease, entitled to recover damages of minimal monthly rentals for the remaining portion of the lease term? 4) Did the trial court err in calculating the overcharges by S & S? Whitewood raises two issues by notice of review: 1) Did the trial court err in refusing to award damages to Whitewood for lost profits? 2) Did the trial court err in calculating a lease payment deficiency owed by Whitewood to S & S?

Initially, we deal with the issue of the meaning of the term "supplier" as used in the lease agreement. Section four of the lease provided in part:

All efforts shall be made by the Lessor to furnish the Lessee with sufficient fuel and the Lessee will at all times give the

Lessor first option to so furnish the fuels. The fuel price to the Lessee will be at the current price of the supplier, plus competitive trucking price, plus the rental hereinbefore set forth . . . .

S & S claims the trial court erred in finding that "supplier" referred to Mobil Oil Corp. and Wyoming Refinery Co., the refiners from whom S & S purchased the fuel before delivering it to Whitewood at the truck stop. The result of the trial court's finding is that the lease required Whitewood to pay exactly the same amount to S & S for the fuel as S & S paid the refiner, with S & S's profits to come from hauling the fuel and the rental of the truck stop. S & S maintains that it is the "supplier," and as such, that the lease allows it to charge Whitewood a price for fuel which is increased from that which it paid to the refiner; this markup is in addition to the amounts claimed for trucking and rental.

■ The primary rule in construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties. *GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442 (S.D.1983); *Forester v. Weber*, 298 N.W.2d 96 (S.D.1980). In determining the intent of the parties, we must consider the entire contract. *Chord v. Pacer Corp.*, 326 N.W.2d 224 (S.D.1982).

■ An analysis of the entire contract and of the other evidence in the case reveals that S & S was not intended by the parties to be the "supplier." First, the introduction to the lease specifically states that S & S will be identified in the document as "Lessor":

This lease, dated April 11, 1979, is entered into between S & S TRUCKING COMPANY, a South Dakota Corporation, of Belle Fourche, South Dakota and with offices in Colony, Wyoming, hereafter called Lessor, and WHITEWOOD MOTORS, INC., of the City of Whitewood, County of Lawrence, State of South Dakota, hereafter called Lessee.

Furthermore, in all other sections of the lease agreement, including section four, S & S is *always* called "Lessor." Nothing in the agreement indicates that S & S will be referred to as "supplier" or by any other title other than "Lessor."

Second, the testimony at trial shows that S & S was not intended to be the "supplier," with the power to mark up the prices. The president of S & S admitted that in negotiation with Whitewood concerning the lease, there was never any discussion about a markup by S & S over the price it paid to the refiners. He also admitted that under S & S's interpretation of the lease provision, there was no limit to the amount of markup that S & S could have charged. The bookkeeper for S & S stated that in the first two months of the lease, she was told by an officer of S & S to charge Whitewood only for rent and freight; there were no markups over the price it paid to refiners. Only later in the lease period did markups occur.

It is hard to imagine that the mutual intent of the parties was to make S & S the "supplier" when the plain language of the lease excludes S & S from the term, when there were no negotiations providing for a markup in prices by S & S, and when S & S did not originally charge any markups. In light of this evidence, we cannot say the trial court was clearly erroneous in finding that "supplier" referred to Mobil Oil Corp. and Wyoming Refining Co. SDCL 15–6–52(a).

■ The second contention of S & S is that the trial court should have allowed testimony from an expert witness as to the customary practices in the petroleum marketing business. The expert's testimony would have been to the effect that bulk distributors of fuel normally mark up the prices they charge to retailers from the price which the distributors are charged by refiners.

In *Bickett v. Borah*, 77 S.D. 140, 87 N.W.2d 552 (1958), we held that custom or usage is not binding on parties to a lease if it is in conflict with express provisions of their agreement. The same rule has been expressed by numerous other courts. *See Robinson v. United States*, 80 U.S. (13

Wall.) 363, 20 L.Ed. 653 (1872); *Keene Co-op. G. & S. Co. v. Farmers Union Ind. Mut. Ins. Co.*, 177 Neb. 287, 128 N.W.2d 773 (1964); *Tong v. Borstad*, 231 N.W.2d 795 (N.D.1975).

In the present case, section four of the lease states that Whitewood was to pay for fuel at the current price of the supplier, plus trucking costs and a rental charge. As shown above, the introduction to the lease and the other sections of the lease clearly indicate that S & S was not the "supplier." "Supplier" refers to refiners while S & S was the "Lessor" in the agreement. Thus, the express language of the lease called for Whitewood to pay for the fuel at the same price S & S paid to the refiners; there was no allowance for markups by S & S. The trial court properly excluded evidence on custom and usage, since it would have been in conflict with express provisions of the lease.

The third contention of S & S is that as a result of Whitewood's termination of the lease, it should be entitled to recover as damages the minimum monthly rentals for the remaining portion of the lease term. These minimum rentals for the remaining thirty-eight months of the lease total $95,000.00. In its findings of fact and conclusions of law, the trial court determined that S & S was not entitled to the damages, partly because it had breached the Petroleum Marketing Practices Act, 15 U.S.C. 2801 (1976). Both S & S and Whitewood now agree that the Act should never have been applied in this case, as it can be applied only in federal court actions. S & S maintains that since the trial court improperly applied the Petroleum Marketing Practices Act, it should not be denied the damages. We disagree.

■ While a breach of the federal act may not be pertinent to this case, the trial court also found that S & S breached the contract between the parties in numerous other ways, thus justifying rescission of the contract by Whitewood. S & S overcharged Whitewood by $89,242.78 due to the markups which were in excess of the current price of the supplier. Due to ex-

pansion of fuel between the refinery and truck stop, S & S billed Whitewood for 11,439 gallons of fuel that Whitewood never received, resulting in an overcharge of $10,052.60. S & S owed Whitewood $5,542.21 for failure to pay for fuel pumped from the "back tanks" at the truck stop. Additionally, after Whitewood requested that the overcharges stop, S & S refused to comply.

SDCL 53–11–2 states:

A party to a contract may rescind the same in the following cases only:

. . . .

(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

. . . .

(4) If such consideration before it is rendered to him fails in a material respect from any cause[.]

In interpreting SDCL 53–11–2, this court has held that a rescission is not generally permitted for casual, technical, or unimportant breaches of the contract. The breach must be substantial and relate to a material part of the contract. *Kary v. Arnold*, 252 N.W.2d 326 (S.D.1977); *Dusek v. Reese*, 80 S.D. 96, 119 N.W.2d 656 (1963).

■ The breaches by S & S in this case are certainly not trivial or unimportant. S & S overcharged Whitewood for fuel costs to the tune of almost $90,000.00, and they continued to do so even after receiving complaints from Whitewood. They also knowingly charged Whitewood for 11,439 gallons of fuel that were never really received by Whitewood. The profit S & S was to receive under the contract was primarily from the rental payments; S & S, however, billed Whitewood for approximately $100,000.00 more than that to which it was entitled by the contract. Because of this material breach on the part of S & S, Whitewood could properly rescind the contract, ending Whitewood's obligation to pay rent. Therefore, the trial court properly denied damages to S & S for the rental payments for the rest of the lease term.

The final issue raised by S & S on appeal is whether the trial court erred in calculating the overcharges by S & S. These overcharges include the markups in fuel price by S & S and the excess gallons caused by expansion which Whitewood paid for but never really received. In its decision, the trial court set forth the following recapitulation of the amounts due and owing from Whitewood to S & S and from S & S to Whitewood:

|  | Owed to S & S | Owed to Whitewood |  |
|---|---|---|---|
| (unpaid invoices 1981) | $ 74,468.97 | $ 89,242.78 | (markup on price) |
| (rental shortfall) | 7,136.00 | 10,052.60 | (excess gallons) |
| (unpaid utilities) | 549.99 | 5,542.21 | (from back tanks) |
| (unpaid utilities 1979) | 3,442.68 | 35,652.96 | (final inventory) |
| (unpaid invoices 1980) | 22,406.39 |  |  |
|  | $108,004.03 | $140,490.55 |  |

S & S maintains that the trial court's calculations involve improper double deductions, and that the calculations force S & S to give up its rental income, payments received for trucking costs, and payments received for fuel taxes. By its own calculations, S & S claims that it owes Whitewood $41,195.17, while Whitewood owes S & S $63,033.25.

Before this court can set aside the trial court's findings of fact and conclusions of law, it must be shown that the findings and conclusions are clearly erroneous. SDCL 15–6–52(a). S & S has failed to meet this burden. A careful analysis of the accounting records and of the trial court's method of determining damages reveals the following: 1) There was no double deduction in the calculations for the excess gallons caused by expansion. The trial court properly determined that Whitewood was entitled to complete reimbursement for all amounts it paid for these "gallons," since Whitewood really never received any product from S & S. 2) As to the overcharges on the actual gallons delivered, the trial court gave reimbursement to Whitewood only for the markup between the price charged by the refiners and that charged by S & S. The reimbursement properly excluded the amounts which Whitewood owed to S & S for rent, taxes, and trucking. 3) In the recapitulation, the trial court included the invoices which were unpaid and owing to S & S, so they need not have been figured in when determining the overcharges. Furthermore, the "corrected charges" presented by S & S in the appendix to its brief do not appear in the record and were not presented to the trial court. Therefore, we affirm the trial court's calculations as to overcharges by S & S.

The first issue raised by Whitewood on notice of review is whether the trial court erred in refusing to award damages to Whitewood for lost profits due to breach of the lease by S & S. The trial court found that since Whitewood did not give fifteen days' notice to S & S before terminating the lease, it was not entitled to damages. Whitewood claims it is entitled to $55,500.00 per year damages for the remainder of the lease term. We disagree.

It is a well-recognized rule of contract law that once a party rescinds a contract, as Whitewood did here by its termination, the contract is extinguished and there is no longer any right of recovery under the contract provisions. *Koch v. Han-Shire Investments, Inc.*, 273 Minn. 155, 140 N.W.2d 55 (1966); *Anson v. Grace*, 174 Neb. 258, 117 N.W.2d 529 (1962); *Seidling v. Unichem, Inc.*, 52 Wis.2d 552, 191 N.W.2d 205 (1971); 17A C.J.S. Contracts § 440 (1963). Therefore, Whitewood cannot rescind the contract and then sue for future damages as if the contract was still in existence. Whitewood can only sue for past damages, such as those awarded by the trial court, which place it in the position it would have occupied if no contract had been made. *See* 12 Williston

on Contracts § 1455 (1970); *Dusek v. Reese, supra.* It makes no difference whether Whitewood's notice of termination was reasonable or unreasonable; Whitewood simply cannot recover future profits after rescinding the contract.

Finally, we deal with Whitewood's claim that the trial court erred in calculating the lease payment deficiency owed by Whitewood to S & S. Section three of the lease called for rental payments by lessee of one and one-half (1½) cents per gallon for all fuel sold from the station, but in no event would the minimum annual rental be less than $30,000.00. The trial court found that Whitewood owed a rental deficiency of $7,136.00 for the twenty-two months it operated the truck stop. Whitewood admits that it owes S & S $764.18 for rent during the first twelve months of operation, but claims it is current on the second year's rent. This claim is totally without merit.

The lease calls for a *minimum* annual rent of $30,000.00, which equals $2,500.00 per month. Whitewood operated the truck stop for twenty-two months before terminating. Therefore, the minimum due to S & S in rental payments was $55,000.00 ($2,500 × 22). By its own admission, Whitewood owes $764.18 for the first twelve months. Also, by its own admission, Whitewood purchased 1,379,726 gallons of fuel from S & S during the last ten months of the lease, which at a rental rate of one and one-half (1½) cents per gallon equals $20,695.89, assuming all of the invoices are paid. This figure is $4,304.11 short of the $25,000.00 guaranteed to S & S under the lease for the final ten months. The sum of $4,304.11 and $764.18 is a $5,068.29 shortfall. In addition, Whitewood admits not paying all the fuel invoices from S & S during the last ten months. Consequently, not only did Whitewood fall $4,304.11 short of making the minimum rental payments over the final ten months, they also failed to pay the one and one-half (1½) cents per gallon rental on all of the 1,379,726 gallons of fuel they purchased. This results in a shortfall of more than $5,068.29. We therefore find the trial court was correct in determining the amount of rental deficiencies owed by Whitewood to S & S.

The judgment of the trial court is affirmed.

All the Justices concur.