BRANER USA, INC., Plaintiff-Appellee, v. CM TECHNOLOGIES, INC., Defendant-Appellant.

First District (6th Division)    No. 1—96—1186

Opinion filed December 20, 1996.

Keck, Mahin & Cate, of Chicago (Richard K. Wray, P.C., of counsel), for appellant.

D'Ancona & Pflaum, of Chicago (Paul E. Freehling and Steven L. Baron, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Braner USA, Inc. (Braner), brought this action for damages against defendant, CM Technologies, Inc. (CMT), alleging that CMT breached a written agreement (Agreement) to sell and install a computer software package called the "Job Shop Manager." CMT denies breaching the Agreement and asserts that Braner prevented CMT from completing the Agreement in accordance with its terms. Following a bench trial, the trial court entered an order granting rescission of the parties' Agreement.

CMT appeals, raising issues as to whether (1) the trial court correctly found that CMT materially breached the Agreement; and (2) the remedy of rescission was proper. For the reasons that follow, we reverse.

Braner, an Illinois company, manufactures machinery for the slitting, shearing and processing of steel coils. CMT, a Wisconsin company, provides computer systems and services to commercial and manufacturing companies.

On October 6, 1993, the parties entered into the Agreement under which CMT promised to sell to Braner a software package called the "Job Shop Manager." Braner paid CMT $60,090 for the system and related services. The Agreement provided that, in the event of litigation, Wisconsin law would apply.

The Agreement further provided that the Job Shop Manager program would be able to interact with Braner's existing Autocad software containing data and bills of materials. The data contained in the Autocad program "is used by Braner in almost every aspect of its business, from purchasing inventory to creating new machines." CMT promised that Braner's existing data would be downloaded into the new system.

However, three months into the contract, one of CMT's technicians, Bob Pabelick, learned that Braner had historically stored its bills of materials in its Autocad drawings in an unusual format. According to CMT, the "random fashion" in which the bills of material had been input did not allow the Job Shop Manager to import Braner's existing data.

CMT maintains that if Braner had stored, or was willing in the future to store, its bills of materials in the "standard" fashion, the bills of material could be extracted and imported into the Job Shop Manager. Braner maintains that compatibility between the two systems would require that Braner manually reenter its existing data in an acceptable format, a process Braner estimates would require an engineer to expend roughly 16,000 working hours. Braner believed this burden would defeat the purpose of the parties' contract and notified CMT of its intention to terminate the Agreement and seek return of its purchase money. CMT maintains that it was Braner's "unwillingness to store its bills of materials in the standard format" that created what both parties recognized to be "an impasse" in the execution of the Agreement.

On January 22, 1994, Braner filed the instant action seeking damages for CMT's alleged breach of contract. Although Braner's one-count complaint did not seek rescission, the trial court, at the close of trial, found rescission to be the appropriate remedy under

Wisconsin law. The trial court found additionally that "the failure to execute the terms of the contract in the manner contemplated by both parties, as it related to the use of the data contained in Braner USA, Inc.'s Autocad system, constituted a breach of contract and destroyed the essential object of the contract." The court also found that CMT received "adequate notice" of Braner's intention to seek rescission despite the absence of such request in Braner's complaint.

The trial court's order of rescission required CMT to refund the $60,090 purchase money and Braner to return to CMT "the hardware and other incidentals of the contract." CMT appeals from this order.

■ The "right of rescission and an action for restitution exist as an alternative remedy to an action for damages where there has been a repudiation or a material breach of a contract." 12 W. Jaeger, Williston on Contracts, § 1455 (3d ed. 1970). Under Wisconsin law, a party seeking rescission must be able to restore the status quo for the opposite party. *Maslow Cooperage Corp. v. Weeks Pickle Co.*, 270 Wis. 179, 189, 70 N.W.2d 577, 582-83 (1955). The party claiming rescission has the burden of proving that the status quo for the other party may be restored. Rescission cannot be granted where the party claiming rescission is unable to restore the benefits received by it. *Maslow*, 270 Wis. at 190, 70 N.W.2d at 582-83; *Mueller v. Michels*, 184 Wis. 324, 331, 199 N.W.2d 380, 382 (1924).

Since the remedy of rescission was not mentioned until closing argument, the issue of Braner's ability to restore CMT to the status quo *ante* was not before the trial court. In fact, the trial court precluded CMT from introducing evidence relative to the condition and value of the equipment and services it furnished to Braner.

On appeal, Braner asserts that "it stands ready to restore CMT to status quo." Several questions remain, however, including what is the current condition of the CMT equipment? What value, if any, should be placed on CMT's labor and services? What beneficial use has Braner derived from the aspects of the CMT product that are operable? And to what extent, if any, has the CMT merchandise diminished in value?

■ In the present case, Braner did not present evidence addressing these questions and has not demonstrated a present ability to restore CMT to the position it held prior to the parties' contract. There can be no rescission unless there is compensation for merchandise that cannot be returned. *Seidling v. Unichem, Inc.*, 52 Wis. 2d 552, 557-58, 191 N.W.2d 205, 209 (1971). Since the record is silent as to the condition "of the merchandise" to be returned, and no monetary value has been ascribed to the services CMT rendered to Braner or the benefit to Braner for its use of the equipment and

services, Braner is unable to show an ability to restore the status quo, and while Braner's ability to do so completely (considering the labor involved and the rapid obsolescence of computer software) is doubtful, the issue must be addressed during the trial if rescission is an appropriate remedy.

A reviewing court will defer to the trial court's findings of fact unless those findings are against the manifest weight of the evidence. *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 649 (1995). A ruling is against the manifest weight of the evidence where the opposite conclusion is readily apparent. *Kurtz*, 275 Ill. App. 3d at 649. In the present case, we reverse the trial court's award of rescission.

There are certain pitfalls to be considered upon the granting of a remedy not contemplated by the pleadings. Although a prayer for relief does not limit the relief obtainable, where other relief is sought the trial court has a duty to protect the opposing party "against prejudice by reason of surprise." 735 ILCS 5/2—604 (West 1992). In the present case, in addition to Braner's failing to offer evidence on an essential component of the remedy of rescission, CMT was unable to challenge Braner's ability to restore the status quo and, consequently, was unable to defend itself against imposition of this equitable remedy. For the reasons set forth above, we reverse the trial court's award of rescission and remand for a new trial.

Reversed and remanded.

TULLY, P.J., and CERDA, J., concur.