SIXTH DIVISION
 December 20, 1996

No. 1-96-1186

BRANER USA, INC., ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 )
 v. )
 )
 )
CM TECHNOLOGIES, INC., ) Honorable
 ) Susan Zwick,
 Defendant-Appellant. ) Judge Presiding.

 JUSTICE GREIMAN delivered the opinion of the court:
 Plaintiff, Braner USA, Inc. (Braner), brought this action
for damages against defendant, CM Technologies, Inc. (CMT),
alleging that CMT breached a written agreement (Agreement) to
sell and install a computer software package called the "Job Shop
Manager." CMT denies breaching the Agreement and asserts that
Braner prevented CMT from completing the Agreement in accordance
with its terms. Following a bench trial, the trial court entered
an order granting rescission of the parties' Agreement.
 CMT appeals, raising issues as to whether (1) the trial
court correctly found that CMT materially breached the Agreement;
and (2) the remedy of rescission was proper. For the reasons that
follow, we reverse.
 Braner, an Illinois company, manufactures machinery for the
slitting, shearing and processing of steel coils. CMT, a
Wisconsin company, provides computer systems and services to
commercial and manufacturing companies.
 On October 6, 1993, the parties entered into the Agreement
under which CMT promised to sell to Braner a software package
called the "Job Shop Manager." Braner paid CMT $60,090 for the
system and related services. The Agreement provided that, in the
event of litigation, Wisconsin law would apply.
 The Agreement further provided that the "Job Shop Manager"
program would be able to interact with Braner's existing
"Autocad" software containing data and bills of materials. The
data contained in the "Autocad" program "is used by Braner in
almost every aspect of its business, from purchasing inventory to
creating new machines." CMT promised that Braner's existing data
would be downloaded into the new system. 
 However, three months into the contract, one of CMT's
technicians, Bob Pabelick, learned that Braner had historically
stored its bills of materials in its "Autocad" drawings in an
unusual format. According to CMT, the "random fashion" in which
the bills of material had been input did not allow the "Job Shop
Manager" to import Braner's existing data.
 CMT maintains that if Braner had stored, or was willing in
the future to store, its bills of materials in the "standard"
fashion, the bills of material could be extracted and imported
into the "Job Shop Manager." Braner maintains that compatibility
between the two systems would require that Braner manually
reenter its existing data in an acceptable format, a process
Braner estimates would require an engineer to expend roughly
16,000 working hours. Braner believed this burden would defeat
the purpose of the parties' contract and notified CMT of its
intention to terminate the Agreement and seek return of its
purchase money. CMT maintains that it was Braner's "unwillingness
to store its bills of materials in the standard format" that
created what both parties recognized to be "an impasse" in the
execution of the Agreement.
 On January 22, 1994, Braner filed the instant action seeking
damages for CMT's alleged breach of contract. Although Braner's
one-count complaint did not seek rescission, the trial court, at
the close of trial, found rescission to be the appropriate remedy
under Wisconsin law. The trial court found additionally that "the
failure to execute the terms of the contract in the manner
contemplated by both parties, as it related to the use of the
data contained in Braner USA, Inc.'s Autocad system, constituted
a breach of contract and destroyed the essential object of the
contract." The court also found that CMT received "adequate
notice" of Braner's intention to seek rescission despite the
absence of such request in Braner's complaint. 
 The trial court's order of rescission required CMT to refund
the $60,090 purchase money and Braner to return to CMT "the
hardware and other incidentals of the contract." CMT appeals from
this order.
 The "right of rescission and an action for restitution exist
as an alternative remedy to an action for damages where there has
been a repudiation or a material breach of a contract." 12 W.
Jaeger, Williston on Contracts, sec. 1455 (3d ed. 1970). Under
Wisconsin law, a party seeking rescission must be able to restore
the status quo for the opposite party. Maslow Cooperage Corp. v.
Weeks Pickle Co., 270 Wis. 179, 189 70 N.W.2d 577, 582-83 (1955).
The party claiming rescission has the burden of proving that the
status quo for the other party may be restored. Rescission cannot
be granted where the party claiming recision is unable to restore
the benefits received by it. Maslow, 270 Wis. at 190, 70 N.W.2d
at 582-83; Mueller v. Michels, 184 Wis. 324, 331, 199 N.W.2d 380,
382 (1924).
 Since the remedy of rescission was not mentioned until
closing argument, the issue of Braner's ability to restore CMT to
the status quo ante was not before the trial court. In fact, the
trial court precluded CMT from introducing evidence relative to
the condition and value of the equipment and services it
furnished to Braner. 
 On appeal, Braner asserts that "it stands ready to restore
CMT to status quo." Several question remain, however, including
what is the current condition of the CMT equipment, what value,
if any, should be placed on CMT's labor and services, what
beneficial use has Braner derived from the aspects of the CMT
product that are operable, and to what extent, if any, has the
CMT merchandise diminished in value? 
 In the present case, Braner did not present evidence
addressing these questions and has not demonstrated a present
ability to restore CMT to the position it held prior to the
parties' contract. There can be no rescission unless there is
compensation for merchandise that cannot be returned. Seidling v.
Unichem, Inc., 52 Wis. 2d 552, 557-58, 191 N.W.2d 205, 209
(1971). Since the record is silent as to the condition "of the
merchandise" to be returned, and no monetary value has been
ascribed to the services CMT rendered to Braner or the benefit to
Braner for its use of the equipment and services, Braner is
unable to show an ability to restore the status quo, and while
Braner's ability to do so completely (considering the labor
involved and the rapid obsolescence of computer software) is
doubtful, the issue must be addressed during the trial if
rescission is an appropriate remedy. 
 A reviewing court will defer to the trial court's findings
of fact unless those findings are against the manifest weight of
the evidence. Kurtz v. Solomon, 275 Ill. App. 3d 643, 649 (1995).
A ruling is against the manifest weight of the evidence where the
opposite conclusion is readily apparent. Kurtz, 275 Ill. App. 3d
at 649. In the present case, we reverse the trial court's award
of rescission.
 There are certain pitfalls to be considered upon the
granting of a remedy not contemplated by the pleadings. Although
a prayer for relief does not limit the relief obtainable, where
other relief is sought the trial court has a duty to protect the
opposing party "against prejudice by reason of surprise." 735
ILCS 5/2-604 (West 1992). In the present case, in addition to
Braner's failing to offer evidence on an essential component of
the remedy of rescission, CMT was unable to challenge Braner's
ability to restore the status quo and, consequently, was unable
to defend itself against imposition of this equitable remedy. For
the reasons set forth above, we reverse the trial court's award
of rescission and remand for a new trial.
 Reversed and remanded.
 TULLY, P.J., and CERDA, J., concur.