**In Re Paul P. SCHOENBURG, Debtor.**
**No. 18135.**

United States Court of Appeals
Fifth Circuit.
June 23, 1960.

Robt. H. Rice, San Antonio, Tex., for appellant.

Edward J. Shahady, Morris Wise, San Antonio, Tex., for appellee.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

This case presents two appeals, consolidated on order of the district court. Both appeals were brought by Paul P. Schoenburg, debtor, from orders of the

district court confirming actions of the referee in bankruptcy. The first order confirmed the referee's finding that an amended proposal for a Chapter XI arrangement had not been accepted by a majority in amount of Schoenburg's unsecured creditors. The second order confirmed the referee's order adjudicating Schoenburg a bankrupt. The two appeals will here be discussed separately.

The facts regarding the first appeal are as follows: On March 11, 1959, Schoenburg filed a petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. At a hearing held on April 2, 1959, the referee found that this proposed arrangement had failed of acceptance. On April 17, 1959, Schoenburg filed an amended proposal, a hearing on which was held May 12, 1959. At this hearing it was determined by the referee that the amended proposal had also failed of acceptance by a majority in amount of Schoenburg's unsecured creditors, although it was accepted by a majority in number.

At the May 12th meeting the referee announced that of 135 claims filed, 98 had accepted the amended proposal. These 98 claims represented $120,117.37 out of a total of $258,074.24. On May 15, 1959, the referee, in rechecking his papers and arithmetic found that his computations of May 12th were in error. His revised figures, which were immediately transmitted to the debtor and his attorney, showed that 119 unsecured claims had been filed and allowed which claims represented $267,339.22. Of these, there were 85 acceptances representing $111,619.64.

In his petition to the district court for a review of the finding that the modified proposal had failed of acceptance and in his appeal to this court, Schoenburg asserts two points of error. First, he complains that the referee erred in refusing to consider the telegraphed acceptance of one creditor whose claim had been allowed for $8,025.02. The trustee points out that the referee acted as he did since the telegram failed to specify whether it was an acceptance of the original proposal or of the modified proposal. Secondly, Schoenburg complains that the referee allowed to be included in one non-accepting claim, $5,000 in attorney's fees which were sought in a state court suit filed but not tried prior to the Chapter XI proceedings. Whether such inclusion was proper or not is not argued by the trustee. On the other hand, the trustee urges, and we must agree, that even if the $5,000 claim for attorney's fees were disallowed and the purported acceptance of $8,025.22 were considered, still there would not be acceptance by a majority of creditors in amount, since, using the referee's corrected figures, this would result in acceptances representing only $119,644.66, or less than 50% of a total unsecured debt of $262,339.22.

Schoenburg makes no mention of the referee's revised findings. It is not asserted that the referee was without power to make the revision, and such a claim could not be sustained. We have no doubt as to the propriety of the correction, by the referee of a mathematical error, at least before anyone has acted in reliance upon the erroneous figure. Certainly the correction might be made by the court from which the reference was made and, as has been said, "an order of reference, * * * when general, may convey all of the powers of the judge not specifically reserved to him by the bankruptcy act." Donald v. Bankers Life Co., 5 Cir., 1939, 107 F. 2d 810, 812, Cf. In re Pottasch Bros. Co., 2 Cir., 1935, 79 F.2d 613, 101 A. L.R. 1182.

Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C. A., and Bankruptcy General Order 36, 11 U.S.C.A. following section 53, this Court is precluded from interfering with the order of a district court confirming a fact finding of a referee in bankruptcy unless error is clearly demonstrated. Langham, Langston & Burnett v. Blanchard, 5 Cir., 1957, 246 F.2d 529; Porterfield v. Gerstel, 5 Cir., 1957, 249 F.2d 634; United States v. Munro-Van Helms

Co., 5 Cir., 1957, 243 F.2d 10. As regards the first appeal here discussed there has been a failure to show any error and the order appealed from must be affirmed.

█ The second appeal relates to the district court's order confirming the referee's adjudication of Schoenburg as a bankrupt. Schoenburg, asserting that he is a farmer within the terms of sections 1(17) and 4, sub. b of the Bankruptcy Act, 11 U.S.C.A. §§ 1(17) and 22, sub. b, says such an adjudication is invalid without his consent. The referee found that Schoenburg was not a farmer and the adjudication followed despite Schoenburg's protests.

From about 1952 to the time of filing the petition, Schoenburg was extensively engaged in the businesses of buying, processing, packing, selling and shipping produce, and farming. Through 1957 his principal headquarters were in California, though he had branches in Idaho and Texas. He operated several large processing plants in California, and his principal operations consisted of buying produce from growers, brokers and others, and processing, packing, selling and shipping this produce at wholesale. Schoenburg owns, in Idaho, some 20 acres of industrial land and 320 acres of farm land which has been under sharecrop lease since 1958. In late 1952 Schoenburg purchased the assets of a wholesale produce and packing firm in Uvalde, Texas, in which he had sustained a $124,000 loss as a limited partner. To carry on his Texas operations he purchased, on deferred payments, a $63,000 packing plant in Uvalde. He also bought some 900 acres of farm land near Uvalde, giving a small down payment and assuming mortgages totaling $236,000. Due to drouth the farm operated at a loss. Such produce as was grown, along with produce purchased from others, was processed in the packing plant.

Schoenburg's federal income tax returns for the years 1952 through 1957 were put in evidence and the referee interpreted those instruments as follows:

"From the foregoing, it is clear that from 1952 to 1957 inclusive, debtor's California processing and packing business was by far the principal business of the debtor, as well as the principal source of both debtor's gross and net income, as compared with his Texas and Idaho operations, both of which operated at a substantial yearly loss since 1953."

After 1957, though he maintained banking and other connections in California and intended to resume operations there, Schoenburg ceased to be active there and turned his attention to the Texas operations. In 1958 he ran the farm and the produce plant in Uvalde. Total receipts from the produce plant, into which all products of the farm were turned, were $350,000. Of this amount, the referee found that $227,000 or, nearly two-thirds, was derived from produce purchased from others. In 1959, because of financial difficulties and the number of suits filed against him, Schoenburg suspended operations. The only income shown for 1959, prior to filing the petition, came from the processing and sale of five carloads of carrots purchased from a supplier in California.

The referee has thus summarized Schoenburg's financial position as of the date of the petition:

"At the time of filing his petition, the debtor according to his schedules was indebted as follows: Secured debts, including debts having priority, $238,034; unsecured debts, $257,917. Of his secured debts and having priority, $107,350 is owing on the mortgage against debtor's Texas farm, $4,734 on taxes against the Texas and Idaho farms, and the remainder of $125,950 arose from his packing business. With regard to the unsecured debts of $257,917 debtor agreed that the major portion is likewise attributable to his packing business."

Section 1(17) of the Act defines a farmer as follows:

" 'Farmer' shall mean an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock or poultry and livestock products in their unmanufactured states, if the principal part of his income is derived from any one or more of such operations." 11 U.S.C.A. § 1(17).

Prior to the enactment of the definition in section 1(17) there had been much confusion as to what was necessary for one to be a farmer. In a discussion of this confusion and the aftermath of the new definition it has been stated:

"It was said that the relative amount of time a man devoted to various lines of endeavor in which he was interested was to be taken into account; the amount of indebtedness contracted in various occupations was accorded consideration; likewise, the comparative sums invested in his assorted ventures were given weight; and it was stated that the degree of interest and care devoted to a particular endeavor was indicative. Many courts, however, had in effect held that a fairly conclusive test was to determine from which occupation an individual derived his chief income or livelihood. This latter test would seem to be the one adopted by the present Act, for § 1(17) says that a farmer is an individual who is personally engaged in farming or tillage of the soil, etc. *if* the principal part of his income is derived from such operations.

\* \* \* \* \*

"It may well be that in close cases where the balance of income is relatively even, the courts will necessarily resort to other tests such as investment, time, indebtedness or interest. The principal test, however, as indicated by the Act and adopted from the rulings of many courts,

should be applied wherever possible \* \* \*" 1 Collier, Bankruptcy, pp. 609–11, para. 4.15.

This interpretation of the Act is in accord with the rationale of decisions of this Court in analogous cases. See Evans v. Florida Nat. Bank, 5 Cir., 1930, 38 F.2d 627; Baxter v. Savings Bank of Utica, N. Y., 5 Cir., 1937, 92 F.2d 404; First State Bank of Stratford, Texas v. Roach, 5 Cir., 1941, 124 F.2d 325.

In applying this test to the facts of this case the referee stated:

"Proceeding then to try to determine from what operations debtor's income was and is principally derived: I agree with debtor's counsel that the mere fact a person operates a sales outlet for his produce will not deprive him of his status as a farmer. But that does not eliminate the question as to whether his principal business may not be the packing, shipping and wholesale selling of other produce than that of his own raising. Nor have I overlooked debtor's testimony that the substantial majority of produce that went through his Uvalde packing shed was produce which had been grown on his Zavala County farm lands. Such testimony was weakened if not contradicted by the figures concerning his 1958 operations and the record of his purchases and sale exclusively of produce raised by others during the early part of 1959. (In fairness to debtor it should be noted that because of previous crop failures, he had no produce of his own raising to sell in 1959 until after his petition for an arrangement was filed in March 1959.) Similarly debtor's statement that the California operations which he intended to resume 'when conditions' permitted would be farming operations because that is what his previous California operations were, is entitled to no weight in view of the manifest evidence of debtor's own Income Tax returns that the California operations were

*primarily, in fact almost entirely,*[1] those of a packer and wholesale distributor of produce. Debtor, although not a lawyer, had done considerable reading on the law and procedure of Chapter XI arrangements. Because of this his testimony on both direct and cross examination was often so phrased as to meet what he apparently thought the most favorable legal consequences thereof would be. At times, however, he proved to know less about the law than he thought he did. I have overlooked and in no wise been influenced in reaching my conclusions by debtor's intransigence.

"The case is not without its difficulties. However, after carefully weighing all of the evidence, the briefs and arguments of counsel and particularly the policy of the law in exempting wage earners and farmers from involuntary adjudication as bankrupts, I have concluded that the debtor may not be so exempted. The exemption was not intended as a refuge for a debtor whose farming is only an incident of other businesses, whose principal debts were incurred in operating such other ventures and whose principal income was not derived from farming."

As noted in connection with the first appeal in his case, this court will not overturn the findings of the lower court unless they are clearly erroneous, and this is especially so where those findings rest on disputed facts and evaluation of credibility. Although, as the referee concedes, "the case is not without its difficulties," we are not persuaded that the findings below are clearly erroneous. Indeed, given the facts presented to the referee and the district court, even the appellant seems to admit that there is no clear error in the refusal to denominate him a farmer. Instead of attacking the adjudication on the basis of the facts presented to the referee, Schoenburg pitches his attack on the ground of testimony not given to the referee but offered to and rejected by the district court at the hearing on the petition for review. This evidence consisted of testimony by the debtor's wife and his California foreman which ostensibly explained some of the terms used and transactions reported in the debtor's income tax returns as well as his mode of operations in California.

Concerning this evidence, Schoenburg states in his brief:

"Mr. Hirschberg's conclusion was entirely incorrect, and that without any intent on his part. There just wasn't anybody before him who could give the correct explanation concerning these matters.

"Proof of error was not possible to the Referee. That proof was offered to the District Judge. * * * The evidence should have been heard and the Referee's error corrected."

Beyond the bald assertion that "Proof of error was not possible to the Referee," no effort is made to explain why, in the course of four lengthy hearings held before the referee, the evidence that was offered to the district court was not presented to the referee. Nor was an answer given the district court:

"The Court: Well he had four hearings and was represented by able counsel, why didn't he offer some proof about it?[2]

"Mr. Rice [Counsel for appellant] That I cannot answer, Your Honor, I am only telling you about what happened right then and I've got the people here to prove it."

1. In his certificate to the district court adjudging Schoenburg a bankrupt, the referee said the italicized words should read simply "principally."

2. After the petition for arrangement had failed of acceptance, Schoenburg's original counsel was allowed to withdraw. He very shortly obtained present counsel. In the interim he undertook to represent himself and the referee was more than accommodating in allowing for and, in effect, correcting, the mistakes he then made.

The appellant has attempted to avoid the effect of his late production of these witnesses by saying that the question as to whether he is a farmer is a jurisdictional one, which may be raised at any time. We think that this contention cannot prevail. The question, as one of jurisdiction, is similar to the question frequently decided by a referee of whether or not an act of bankruptcy has been committed. Thus there was no absolute right to present new evidence on this question.

The procedure in such situations is outlined in Bankruptcy General Order 47, 11 U.S.C.A. following § 53:

"Unless otherwise directed in the order of reference the report of a referee * * * shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

Whether or not, on the petition for review, new evidence shall be received is a matter of discretion with the district court. Carter v. Kubler, 320 U.S. 243, 64 S.Ct. 1, 88 L.Ed. 26; Equitable Life Assur. Co. of United States v. Carmody, 8 Cir., 1942, 131 F.2d 318. Before it can be said that this discretion has been abused, there must be some showing of injustice. Here no such showing has been made. Indeed it would appear that the district court subsequently considered the substance of the testimony offered but rejected at the hearing on the petition for review. Affidavits of those whose testimony the appellant proposed to take, reciting the testimony they proposed to give, were attached to the petition for rehearing. The order denying the relief sought by that petition recites that "the said petition * * * and the affidavits accompanying same have been carefully considered. * * *" This Court too has carefully considered the petition for review and the attached affidavits and finds no abuse of discretion in the refusal of the district court to receive the tendered evidence. The finding of the referee that the appellant was not a farmer and the court's order affirming and confirming that finding are free from error. It follows that the decision appealed from in the second appeal, as well as that in the first, should be affirmed.

Affirmed.