**UNITED STATES of America, acting Through the FARMERS HOME ADMINISTRATION, Appellant,**

v.

**Michael Morris COOK and Shirley Rae Cook, Appellees.**

**Civ. No. 91–3026.**
**Bankruptcy No. 385–00039.**

United States District Court,
D. South Dakota,
Central Division.

June 15, 1992.

Thomas A. Lloyd, U.S. Attorney's Office, Pierre, S.D., for appellant.

William J. Pfeiffer, Aberdeen, S.D., for appellees.

## MEMORANDUM OPINION

DONALD J. PORTER, Senior District Judge.

This Court has jurisdiction under 28 U.S.C. § 158 (1988). In this appeal, Appellant Farmers Home Administration (FmHA), an undersecured creditor, asks this Court to consider whether the Bankruptcy Court[1] erred in allowing Appellees Michael and Shirley Cook to discharge chattel liens held by the FmHA 126 B.R. 575.

---

1. The Honorable Peder K. Ecker, Bankruptcy Judge, United States Bankruptcy Court for the District of South Dakota.

This Court affirms that part of the Bankruptcy Court's decision discharging the FmHA's chattel liens, but reverses its decision concerning the present value payment of the undersecured claim.

### Factual Background

Michael and Shirley Cook filed a petition for relief under Chapter 11 bankruptcy on April 4, 1985. A second amended Chapter 11 Plan (Plan) was confirmed on June 17, 1987. The FmHA timely filed an election under 11 U.S.C. § 1111(b) and, after initially rejecting the plan, voted to accept the Plan.

The Farmers Home Administration, as the creditor with the largest claim under the Plan, possessed an allowed claim of $702,313.86. The allowed claim was divided into four sections in the following manner: (1) Class 1(A) Allowed secured claim, real estate, $101,759.68; (2) Class 1(B) Allowed secured claim, chattels, $174,275.00; (3) Class 1(C) Undersecured claim, $426,-279.18; and (4) Class 1(D) Section 1111(b) election.

Under the Plan, payments for the FmHA's secured claim in the real estate were to be made annually until the year 2019 when full payment would occur. Payments on the secured claim in chattels were also to be made annually until full payment in the year 2002. As to the undersecured claim in the amount of $462.279.18, the Plan contemplated that the Cooks would make two payments of $25,985.00 each on the first day of January of each of the two years following completion of the payments with respect to the real property and chattels. The Plan also contained a provision concerning the FmHA's 1111(b) election.

Article XIII of the Plan authorized the Cooks to prepay any claim or portion of the claim. The Cooks on April 9, 1990, under this prepayment clause, made full payment of the chattel debt representing the FmHA's allowed secured claim on the chattels.

On July 20, 1990, the Cooks moved to discharge all chattel liens upon prepayment of the allowed secured claim on chattels. The FmHA refused to discharge the chattels liens because the liens served the purpose of securing the FmHA's § 1111(b) option on the undersecured debt. The Cooks tendered payment of the present value of the undersecured debt, but the FmHA refused to accept the payment. The FmHA claims that it is entitled to the full amount of the two $25,985.00 payments and not merely the present value of the payments.

Standard of Review

 In reviewing judgments of bankruptcy courts, district courts serve in a similar capacity as appellate courts. *See Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). The Bankruptcy Court's conclusions of law are reviewed de novo, while its findings of fact are reviewed under the clearly erroneous standard. *See In re Dakota Rail, Inc.*, 946 F.2d 82, 84 (8th Cir.1991), *cert. denied sub nom. Ross v. Dakota Rail, Inc.*, — U.S. ——, 112 S.Ct. 1566, 118 L.Ed.2d 212 (1992). This Court will not disrupt the Bankruptcy Court's findings of fact unless "left with a 'definite and firm conviction that a mistake has been committed.'" *In re Hilyard Drilling Co., Inc.*, 840 F.2d 596, 599 (8th Cir.1988) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

### Discussion

The parties do not contest the validity of the government's election under § 1111(b), but rather the effect of the election. The Cooks argue that the FmHA's chattel liens should be discharged as a result of the Cooks' full payment on the chattel debt. The government contends that its election under 11 U.S.C. § 1111(b) prevents discharge of the chattel liens until payments are complete with respect to both the real property and chattel property as well as for the undersecured debt classified in Class 1(C) of the Plan.

Creditor's Election Under 1111(b)

That part of 11 U.S.C. § 1111(b) relevant to this case specifies that:

(1)(A) A claim secured by a lien on property of the estate shall be allowed or

disallowed under section 502 of this title [11 U.S.C.S. § 502] the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title [11 U.S.C.S. § 363] or is to be sold under the plan.

(2) If such an election is made, then notwithstanding section 506(a) of this title [11 U.S.C.S. § 506(a)], such claim is a secured claim to the extent that such claim is allowed.

"The purpose of § 1111(b) is to provide an undersecured creditor an election with respect to the treatment of its deficiency claim. Generally, the creditor may elect recourse status and obtain the right to vote in the unsecured class, or it may elect to forego recourse to gain an allowed secured claim for the entire amount of the debt." *Matter of Greystone III Joint Venture*, 948 F.2d 134, 140 (5th Cir.1991). The § 1111(b) election is beneficial to the under-collateralized creditor who possesses an optimistic view of the debtor's reorganization or believes that the value of the collateral will increase in value over time. The election equally enhances the debtor's interests in that it, in conjunction with §§ 1124 and 1129, affords the debtor the opportunity to retain encumbered property and to realize successful reorganization. *See Tampa Bay Assocs., Ltd. v. DRW Worthington, Ltd.*, 864 F.2d 47, 50 (5th Cir.1989); 5 L. King *Collier on Bankruptcy*, § 1111.-02[14–15] (1992).

■ The parties do not contest § 1111(b)'s applicability to personal property. A plain reading of section 1111(b) illustrates that Congress intended § 1111(b) to apply to undersecured creditors irrespective of the nature of the collateral securing the debt. *See 3 Norton Bankruptcy Law and Practice*, § 58.01 (1991). Although § 1111(b) applies to both real and personal property, the statute itself does not indicate whether a creditor who makes an § 1111(b) election with respect to both real and personal property is entitled to retain a lien on the personal property despite the debtor's payment of the debt secured by the personal property. Rather, the resolution of this issue is governed by the parties' intent as evidenced in the Chapter 11 Plan.[2]

■ In discerning the meaning of the Chapter 11 Plan applicable to this case, general rules of contractual interpretation apply. *See In re Amarex, Inc.*, 96 B.R. 330, 332 (W.D.Okl.1989). The primary goal, therefore, is to ascertain and give effect to the parties' intentions. *See American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D.1990); *Buhl v. Bak*, 400 N.W.2d 903, 905 (S.D.1987). To ascertain the parties' intent, the Court must look to the language used by the parties, *see Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985), and examine the contract in its entirety. *See Buhl v. Bak*, 400 N.W.2d 903, 905 (S.D.1987); *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D.1986); *S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297, 299 (S.D.1984).

■ The Court finds the Plan when read as a whole sufficiently expresses the parties' intent to release the liens on the chattel property once the payments for the chattel property were completed in accordance with the plan. The parties represented their intent with respect to the various claims and interests in Article IX of the Plan entitled *"Provision for Treatment of*

---

**2.** The Bankruptcy Court correctly ruled that this case is distinguishable from this Court's decision in *In re H & M Parmely Farms*, 127 B.R. 644, 645 (D.S.D.1990). In *Parmely Farms*, the debtors were precluded from arguing that the FmHA's § 1111(b) election did not apply to both real estate and chattel property because the debtors violated the equity doctrine of clean hands. *See id.* at 646–47. In this case there has been no argument that the Cooks have transgressed equity in seeking discharge of the chattel liens.

*Claims and Interests.*" In Class 1(A) of Article IX, the debtors were to make payments on the real estate until January 1, 2019 at which time the indebtedness would be paid in full. The section clearly illustrates that when the debt on the real estate is paid in full, the FmHA "shall thereupon, and forthwith, satisfy, release and discharge all ... liens, and encumbrances whatsoever against the Debtor's property." Class 1(B) of Article IX contains a similar provision regarding lien discharge. This section states that upon the debtors' payment in full of the debt on the chattels in the amount of 174,275.00, the FmHA "shall thereupon, and forthwith, release, satisfy, and discharge all ... liens, and encumbrances whatsoever against any and all of the Debtor's personal property." Admittedly, there is some difficulty reconciling the plan provisions involving the real property and chattel property with the plan provision concerning the § 1111(b) election. However, "if a conflict exists between a specific provision and the general provision in a contract, then the specific provision is to govern." *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 152 (S.D. 1986). The general provision with respect to the § 1111(b) election, Class 1(D), states that the FmHA:

> will maintain its lien on the property of the Debtors, as hereinabove set forth, secured to such extent until such time ... the payments under the Plan have been completed as provided herein. When payments have been made in accordance with the terms of this Plan, all indebtedness whatsoever to Farmers Home Administration will be deemed paid and satisfied in full, and Farmers Home Administration will thereupon release all ... liens, and encumbrances whatsoever that it has against any and all of the Debtors' property.

The Court, reading the Plan as a whole, is unable to give this provision the interpretation asserted by the government in the face of the specific lien release provisions in Classes 1(A) and 1(B) of the Chapter 11 Plan. As a result, the Court finds that the Bankruptcy Court did not error in granting the debtors' motion to discharge the chattel liens.

Payment of Undersecured Claim

■ The parties also disagree over the value of the FmHA's entitlement to the Class 1(C) payments. The FmHA contends that the Cooks must tender the full value of the two $25,985.00 payments according to the Plan. The Cooks argue that the FmHA is entitled only to the present value of the two payments. The Court, however, finds it unnecessary to reach this issue. The Plan clearly contemplated that the payments under Class 1(C) would be tendered only after payments were completed with respect to the chattel and real property. Class 1(C) illustrates that in full and complete satisfaction of the undersecured debt of $426,279.18, "the Debtors will make two payments of $25,985.00 *each on the first day of January of each of the two years following completion of payments as hereinabove set forth.*" (Emphasis added). Because the payments on the real property were scheduled to be completed by the year 2019, the first Class 1(C) payment under the Plan was scheduled as due on January 1, 2020, and the second on January 1, 2021. There is no indication that the Cooks have completed the payments on the real property. It is conceivable the debtors will pay the debt on the real estate in accordance with the schedule in the Plan, that is, in the year 2019, and therefore, the FmHA would unquestionably be entitled to the full value of the two $25,985.00 payments as stated in the Plan. Because the payments on the real property have not been completed, the prerequisites under the Plan for the FmHA's right to the Class 1(C) payments have not been met. The Court finds it premature to rule on the proper value, present or full, of the Class 1(C) payments. The Bankruptcy Court's ruling with respect to the Class 1(C) payments is reversed and remanded for further proceedings consistent with this opinion.

Conclusory Remarks

The issue before the Court is whether the government, as a creditor who has made a § 1111(b) election, is entitled to

retain its lien secured by debtors' chattel property irrespective of the debtors full payment of the debt on the chattel property. The Court finds that the Bankruptcy Court did not error in discharging the FmHA's lien on the debtors' chattel property. However, the Bankruptcy Court prematurely awarded the FmHA payments under Class 1(C) of the Plan because debtor has yet to satisfy the preconditions for such payments. Accordingly, the Bankruptcy Court's decision is affirmed in part and reversed and remanded in part for further proceedings consistent with this Opinion.

An order consistent with the foregoing opinion will be separately filed.