## In re MIAMI TRUCOLOR OFFSET SERVICE CO., Debtor.

### Bankruptcy No. 94–23868–BKC–RBR.

United States Bankruptcy Court,
S.D. Florida,
Broward Division.

Aug. 31, 1995.

Jerry M. Markowitz, Paul A. Avron, Thomas M. Messana, Markowitz, Davis and Ringel, P.A., Miami, Florida, for debtor.

### MEMORANDUM ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION

RAYMOND B. RAY, Bankruptcy Judge.

This matter came before the Court on August 16, 1995 for hearing to consider confirmation of the Amended Plan of Reorganization filed by the Debtor, Miami Trucolor Offset Service Co. [hereafter "Plan"]. An objection to confirmation was filed by Simplicity Pattern Company, Inc. ["Simplicity"], and an *ore tenus* objection to confirmation was made by the United States Trustee. Upon consideration of the Plan and Disclosure Statement[1], the arguments of counsel, the written and *ore tenus* objections to confirmation of the Plan, the Certification of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certification of Amount Deposited and Payment of Fees [hereafter "Certification of Tabulation of Ballots"] filed in connection with the confirmation hearing and certifying the tabulation of ballots with respect to the vote of creditors on the plan, applicable authorities, and with the Court being otherwise duly advised in the premises, I find that it is appropriate to confirm the Plan for the reasons set forth herein.

---

1. All capitalized terms used in this order and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

### a) The objection of the United States Trustee with regard to class 5 voting is overruled

The Certification of Tabulation of Ballots indicates that nine (9) general unsecured creditors[2] with claims of less than $7,500, who could have voted in the Class 4 Allowed Administrative Convenience class or Class 5, chose to cast their ballots as part of Class 5. At the confirmation hearing the United States Trustee objected to counting these votes in Class 5, stating that, because these nine (9) claimants had claims of less than $7,500, their votes should be counted as Class 4 votes.

The Debtor argues that the United States Trustee's position overlooks the obvious: that the Debtor's Plan gave general unsecured creditors with claims under $7,500 *the option* of voting in either Class 4 or Class 5. I agree.

The Plan provides that Class 5 "shall consist of All Allowed Unsecured Claims." *See* Plan at 14, Article III, § 3.05.1. The Plan defines, in pertinent part, an Allowed Unsecured Claim as "any Allowed Claim that is not an Allowed Administrative Claim, an Allowed Priority Claim, or an Allowed Priority Tax Claim." *See* Plan at 5, Article I, § 1.08.

Class 4 of the Plan is the Allowed Administrative Convenience Claims which consists of general unsecured claims not exceeding $7,500. *See* Plan at 3–4, Article I, § 1.03. Through this convenience class, general unsecured creditors with claims of less than $7,500, or creditors who were willing to reduce their claim to $7,500, were given the opportunity to obtain a higher dividend in exchange for the Debtor alleviating itself of the administrative burden of issuing checks

on small monthly payments. The creditors that had that option made an affirmative decision to cast their votes in Class 5. Accordingly, these nine (9) creditors' votes will be counted as cast and the United States Trustee's objection is overruled.

### b) The Votes of Lino–Type Hell Company and Marine Midland (U.S. Concord, Inc.) were never allowed for voting purposes and therefore were not counted

Two claimants, Lino–Type Hell Company ("Lino–Type") and Marine Midland (U.S. Concord, Inc.) ("Marine Midland"), cast votes rejecting the Plan. For the reasons discussed below, the Court will not count these votes. Alternatively, even if these votes were counted, they do not prevent confirmation of Debtor's Plan.

The basic rule on who may vote on a plan is set forth as follows: "[t]he holder of a claim or interest **allowed** under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a) (emphasis supplied). Section 502 provides that "[a] claim or interest ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Rounding out the statutory framework, Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, in pertinent part, provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

Consistent with Rule 3018(a) and Sections 502 and 1126(a) of the Code, the Debtor's Disclosure Statement provides that "[a] holder of a Disputed Claim[3] may vote on the Plan only if and to the extent that its Claim

---

**2.** Coronet Paper Products, Inc.; Florida Power & Light; Watkins Motor Lines; A Plus Lamination; Compuplus, Inc.; BellSouth Mobility; Southern Sanitation Service; Printers Service; and VGC Corp.

**3.** The Plan defines a "Disputed Claim" as follows:
(a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) a Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (c) a

Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined, in whole or in part, by a Final Order.
Plan at 7, Article I, § 1.25. Both Lino–Type and Marine Midland's claims, on Debtor's objections thereto, became "disputed claims" as defined above.

is allowed by the Court for the purpose of voting prior to the last day for submitting ballots." Disclosure Statement at 4, Section IV (emphasis supplied).

Pursuant to the Court's Omnibus Order Setting Deadlines and Local Rule 307(B), on July 7, 1995, the Debtor timely filed Objection(s) to Claims, including the claims of Lino–Type and Marine Midland.

Neither Lino–Type nor Marine Midland sought or obtained leave of Court to have their claims allowed for voting purposes, prior to August 6, 1995, the last day for submitting ballots. There was no court order allowing either Lino–Type or Marine Midland's claims at any time. Because neither Lino–Type nor Marine Midland obtained a court order allowing their claims for voting purposes, their votes cannot be counted.[4] *Bell Road Investment Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211, 215 (9th Cir. BAP 1989).

Even assuming *arguendo* this Court was persuaded to allow the votes of Lino–Type and Marine Midland rejecting the Plan, that decision would not preclude confirmation of Debtor's Plan. Section 1126 of the Code provides, in part, that "[a] class of claims has accepted a plan if such plan has been accepted by creditors ... that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors...." 11 U.S.C. § 1126(c). Class 5, consisting of general unsecured creditors like Lino–Type Hell and Marine Midland, totals 14 in number and $1,180,-563.99 in amount. For purposes of this discussion, were the Court inclined to value the claims, which it was not requested to do,[5] it would have permitted the claims as voted by Lino–Type in the amount of $125,761.24 and Marine Midland in the amount of $150,289.00 for a total of $276,050.24.

Fourteen (14) creditors, including Lino–Type and Marine Midland, cast Class 5 ballots. Three (3) creditors, including Lino–Type and Marine Midland, voted against the Plan. Debtor, then, has obtained eleven (11) affirmative votes or 79% of the Class 5 votes, clearly more than one-half of the number of creditors in that class as required by Section 1126(c). The total amount of the claims of the Class 5 affirmative votes is $903,020.75. The total amount of the claims of the Class 5 negative votes, including those of Lino–Type and Marine Midland, is $277,543.24. Debtor has obtained affirmative votes of 76% of the amount of Class 5 claims, clearly more than the requisite two-thirds (66.66%) in amount as required by Section 1126(c). Thus, even if this Court were to allow the votes of Lino–Type and Marine Midland, which it is not inclined to do, the Debtor still carries Class 5 and its Plan would still be due to be confirmed.

## c) Simplicity Pattern Company, Inc. never timely voted on the Plan

■ Inexplicably, notwithstanding the filing of its Plan Objection, a review of the ballots filed prior to the confirmation hearing indicates that Simplicity Pattern Co., Inc. ("Simplicity") failed to cast a ballot for acceptance or rejection of the Plan.[6] At the confirmation hearing, Simplicity argued that the Court should consider its written objection to confirmation as a vote against Debtor's Plan. I decline to do so.

On July 6, 1995, I entered an order approving the ballot form proposed by Debtor. The approved ballot form was mailed to all creditors, including Simplicity, as required. Rule 3018(c) provides, in part, that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor ... or an

---

**4.** The Court notes that two other claimants, Simplicity Pattern, Inc. and Salon, Marrow & Dyckman, did timely file motions to allow their claims for voting purposes and are the subject of separate orders.

**5.** The Court notes that neither Lino–Type nor Marine Midland were in attendance at the confirmation hearing. Moreover, neither entity filed an objection to confirmation.

**6.** The Court has been advised that on or about August 1, 1995, Simplicity allegedly filed a ballot rejecting the Plan. To date, Simplicity has failed to file a written motion requesting that the Court consider the ballot as having been timely filed and has offered no credible evidence that the ballot was timely filed.

**770**

authorized agent, and conform to the appropriate Official Form." Fed.R.Bankr.Pro. 3018(c). I read Rule 3018(c) as requiring the filing of a ballot,[7] which Simplicity failed to do.[8] *See also In re Kellogg Square Partnership,* 160 B.R. 332, 335 (Bankr.D.Minn.1993) ("To ensure certainty in the confirmation process, creditors must commit themselves to accept or reject a plan by the unequivocal means of casting a ballot by a fixed date.").

The Debtor's Plan and Disclosure Statement were mailed to Simplicity on July 7, 1995. There is no question that Simplicity had more than sufficient time to review these documents and cast a ballot. Simplicity's written objection to confirmation, filed on August 2, 1995, is evidence of that fact. Simply put, Simplicity had the obligation to cast a ballot and failed to do so. Having failed to exercise diligence to protect its interests, I will decline Simplicity's invitation to consider

its objection to confirmation as a vote against the Plan.

### d) Simplicity's objections to confirmation are overruled

■ At the confirmation hearing the Court heard argument concerning various issues raised by Simplicity in its Plan Objection. The objections raised by Simplicity can be categorized as follows: (1) the Plan violates the absolute priority rule as codified in § 1129(b)(2)(B)(ii) and, if the "new value exception" to the absolute priority rule applies, the new value contribution is insufficient; and (2) the Plan is not "feasible" as required by § 1129(a)(11).[9] At the confirmation hearing, the Court stated that it would rule on Simplicity's objections based on the **evidence** before it. The **only** evidence put forward by Simplicity was the affidavit of Frank J. Rizzo ("Rizzo"), Simplicity's Senior Vice-President and Chief Financial Officer.[10]

7. Local Rule 318, in pertinent part, states: "Ballots shall conform to the local form 'ballot'. Except as otherwise ordered by the Court, ballots accepting or rejecting a Chapter 11 plan shall be filed with the court not later than 10 days prior to the confirmation hearing."

8. Simplicity offers two cases in support of its proposition that its Objection to Confirmation should be counted as a vote against the Plan. *See In re Westwood Plaza Apartments,* 147 B.R. 692 (Bankr.E.D.Tex.1992); and *In re Schoenburg,* 279 F.2d 806 (5th Cir.), *cert. denied,* 364 U.S. 923, 81 S.Ct. 290, 5 L.Ed.2d 262 (1960). I decline to follow *Westwood Plaza* because it cited no direct authority in support of its conclusion that an objection to confirmation should be considered a vote against the plan. The court found that the objection to confirmation was an "informal" vote against the plan, relying upon the analogy to "informal" proofs of claim. *See In re International Horizons,* 751 F.2d 1213, 1218 (11th Cir.1985). *Westwood Plaza* is not binding authority and this Court respectfully declines to follow its conclusion.

Likewise, I find *In re Schoenburg* to be inapposite. The issue of whether an objection to confirmation can be counted as a vote against a plan of reorganization was not addressed in that case. The *Schoenburg* Court addressed only one issue relevant here: whether an amended plan received enough votes (in amount) to be confirmed. The Court rejected the argument that the bankruptcy referee committed reversible error in refusing to accept the telegraphed acceptance of a creditor whose claim had been allowed in a sum certain. If anything, this case controverts Simplicity's position and, in fact, can be cited as authority for this Court's conclusion that Rule

3018 requires that a creditor actually, physically file a ballot with the Court.

9. Although not part of its written objection, at the confirmation hearing Simplicity argued that the Debtor's Plan was not proposed in good faith and therefore does not comply with Section 1129(3). Simplicity appears to argue that the Debtor has treated creditors unfairly and that is evidence that the Plan has not been proposed in good faith. "Good faith may be considered in the light of the way in which the debtor acts or conducts its business during the pendency of the Chapter 11 case and it may come up in the form of the plan the debtor proposes." 5 *Collier on Bankruptcy,* ¶ 1129.02[3], at 1129–34 (15th ed. 1995). There has been no showing, let alone an allegation, that Debtor has conducted its business during the pendency of this case in an improper manner. To the contrary, from what the Court has seen, it appears that Debtor has acted properly in all respects. The Court finds nothing improper in the form of Debtor's proposed Plan. The Plan has not been formulated to disadvantage Simplicity or any other creditor. It is formulated and calculated to reorganize significant debts so that the Debtor can remain a viable financial entity. The Court notes that the vast majority of creditors who voted, in both number and amount, voted to accept the Plan. Additionally, only one creditor objected to the confirmation of the Plan. In the absence of any additional evidence, Simplicity's oral objection is overruled.

10. Rizzo's testimony consists of a two paragraph affidavit as follows:

1. I am a Senior Vice President and Chief Financial Officer of Simplicity Pattern Co., Inc.,

For the reasons discussed below, I find Rizzo's testimony not to be sufficient. Under penalty of perjury, Rizzo, on behalf of Simplicity, filed a proof of claim in the amount of $418,447.08. Simplicity's claim is based upon a judgment it obtained against the Debtor in the amount of $155,313.13 with interest from January 21, 1991 through April 26, 1994 in the amount of $45,611.00 and fees in the amount of $125,000.00 for a total of $325,924.15. Through application to the trial court, Simplicity had sought $185,801.33 in fees through January 19, 1994. The trial court, then, through its order, denied $60,801.33 in fees and expenses sought by Simplicity's counsel. The fee order, in a rather terse fashion, specifically found that, in light of the amount of money at stake, the fees expended were "excessive" and "unreasonable." Nevertheless, through its proof of claim signed by Rizzo, Simplicity sought payment of at least some portion of the fees and expenses that had previously been denied.[11] Suffice it to say that these facts, without more, cause me to afford little, if any, weight toward Rizzo's testimony.[12] In any event, Simplicity's objections to confirmation are not well-taken and are overruled.

Simplicity's written objection contends that the Plan is not "feasible." Simplicity states that the Court should not confirm a plan that proposes to just "squeak by." Section 1129(a)(11) contains the feasibility requirement which provides, in part, as follows:

Confirmation ... is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan....

11 U.S.C. § 1129(a)(11). According to the leading bankruptcy commentator,

[F]easibility involves the question of the emergence of the reorganized debtor in a solvent condition and with reasonable prospects of financial stability and success. It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success.

5 *Collier on Bankruptcy*, ¶ 1129.02, at 1129-61 (15th ed. 1995).

The Plan requires the Debtor to make approximately $635,000 of payments to creditors over forty-eight (48) months. Based upon the projected financial statements and the Debtor's eight filed Debtor-in-Possession Financial Reports, it is evident that the reorganized Debtor will be able to make the required payments. Moreover, it is inconsistent for Simplicity to argue, on the one hand, that the Plan is not feasible and, on the other, that the Debtor has not committed sufficient resources to the Plan.

While it is true that the Debtor's financial health will improve markedly after the Plan obligations are fulfilled, that is expressly the purpose of Chapter 11. Of course, although the foregoing does not guarantee a successful reorganization, Debtor is not required to make such a showing. Based on the Debtor's long-term customer base, its proven ability to provide quality goods and services, the Plan "present[s] a workable scheme of organization and operation from which there may be a reasonable expectation of success." I

a manufacturing and sales company with annual sales in excess of $60 million. I am a graduate of Hofstra University with a Master's degree in Finance. Through my education, professional and business experience I have become knowledgeable concerning evaluation of businesses.

2. I have reviewed the Amended Disclosure Statement and Amended Plan of Reorganization of Miami Trucolor Offset Service Co. and have analyzed the financial information therein. I have also reviewed the Objection to Confirmation filed by Simplicity in this case. The analysis, facts and circumstances stated in the Objection are true and correct to the best of my knowledge, information and belief.

11. *See* Order Sustaining Debtor's Objection to Claim of Simplicity Pattern Co., Inc. which is incorporated herein by reference.

12. In contrast to Simplicity's evidence, the Debtor offered the Debtor-in-Possession Confirmation Affidavit, including by reference its Plan, Disclosure Statement and exhibits thereto which encompass eight (8) monthly operating statements, Debtor's Projected Financial Statement for Years Ending April, 1996 through 2000, Debtor's Valuation Report as of April 30, 1995 and Liquidation Statement as of February 28, 1995. The foregoing evidence was received without objection.

therefore find that the Plan is "feasible".[13]

The bulk of Simplicity's Plan Objection was directed toward its contention that Debtor's Plan was not "fair and equitable" as required by 11 U.S.C. § 1129(b)(1). At the confirmation hearing, however, Simplicity conceded that, if the Debtor had obtained the votes necessary for a consensual plan, the "fair and equitable" requirement which comes into play in a "cram down" situation is inapplicable. *In re Cook,* 126 B.R. 575, 583 (Bankr.D.S.D.1991) ("Consensual confirmation through Section 1129(a)(8) means that the unfair discrimination and fair and equitable cramdown requirements of Section 1129(b) are inapplicable."), *modified on other grounds,* 147 B.R. 513 (D.S.D.1992). Since I have overruled the objections made by the U.S. Trustee and Simplicity and find that the Plan complies with the applicable provisions of Chapter 11 so as to be confirmable pursuant to Section 1129(a), it is not necessary to address whether the Plan complies with the provisions of Section 1129(b).

### e) The Plan complies with the applicable provisions of the Bankruptcy Code

The Plan and First Modification, copies of which are attached as Composite Exhibit "A" to this Order, comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).

The Debtor, as proponent of the Plan and First Modification, has complied with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2).

The Plan and First Modification have been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3).

Any payment made by Debtor for services or for costs and expenses in or in connection with this case, or in connection with the Plan and First Modification and incident to this case, have been approved by, or are subject to approval by, this Court. 11 U.S.C. § 1129(a)(4).

The Debtor has disclosed the identity and affiliations of all individuals proposed to serve, after confirmation of the Plan and First Modification, as officers or directors and the appointment or continuation of such individuals in such offices is consistent with the interests of creditors, equity security holders and public policy; and the Debtor has disclosed the identity of any insiders that will be employed or retained by Debtor and the nature of the compensation to such insider. 11 U.S.C. § 1129(a)(5)(A) and (B).

With respect to each impaired class of Claims under the Plan and First Modification, each holder of a Claim of such class (i) has accepted the Plan and First Modification or (ii) will receive or retain under the Plan and First Modification on account of such Claim property of a value, as of the effective date of the Plan and First Modification, that is not less than the amount that such holder would receive or retain if these cases were liquidated under chapter 7 of the Bankruptcy Code on the effective date of the Plan and First Modification. 11 U.S.C. § 1129(a)(7)(A).

With respect to each class of Claims under the Plan and First Modification (i) such class has accepted the Plan and First Modification or (ii) such class is not impaired under the Plan and First Modification. 11 U.S.C. § 1129(a)(8).

Any holders of Claims under Section 507 of the Bankruptcy Code will be paid either (i) pursuant to § 1129(a)(9)(C) or (ii) in full under the Plan and First Modification either on the effective date of the Plan and First Modification or as may otherwise be agreed upon between the Debtor and any respective holders of Claims under Section 507. 11 U.S.C. § 1129(a)(9)(A)–(C).

Classes 1, 2, 3, 4, 5 and 6, the only impaired classes of Claims under the Plan and First Modification, have accepted the Plan and First Modification, without including any acceptance by any insider holding a Claim in such class. 11 U.S.C. § 1129(a)(10).

Confirmation of the Plan and First Modification is not likely to be followed by the liquidation, or the need for further financial

---

**13.** It is worth noting that Simplicity's contention that the Court should not confirm the Plan which it (Simplicity) describes as one that would just "squeak by" is internally inconsistent with its seeking a higher distribution to unsecured non-priority creditors.

reorganization, of the Debtor or any successor to the Debtor under the Plan and First Modification. 11 U.S.C. § 1129(a)(11).

All fees payable under 28 U.S.C. § 1930 as determined by the Bankruptcy Court have been or will be paid under the Plan and First Modification. 11 U.S.C. § 1129(a)(12).

**The Plan and First Modification are hereby CONFIRMED.** The Debtor is hereby authorized and directed to take all steps necessary to implement and effectuate consummation of the Plan and First Modification as promptly as practicable in accordance with its terms.

The Court shall retain jurisdiction as provided in the Plan.

The Plan and First Modification shall bind the Debtor, any creditor of the Debtor and any equity security holder of the Debtor, whether or not the claims or interest of such creditor or equity security holder is impaired pursuant to the Plan and First Modification and whether or not such creditor or equity security holder has accepted the Plan and First Modification.

Except as otherwise provided in the Plan and First Modification, on the Confirmation Date, all the property of the Debtor's estate shall vest in the Debtor.

Except as otherwise provided in the Plan and First Modification, on the Confirmation Date, all the property dealt with by the Plan and First Modification is free and clear of all claims and interests of creditors and equity security holders, respectively.

Jerry M. Markowitz of the law firm of Markowitz, Davis and Ringel, P.A. is named as disbursing agent without additional compensation; bond is waived; the disbursing agent is directed to make all first installment payments on the effective date of the Plan. Unless otherwise ordered by the Court, the disbursing agent shall, not later than sixty (60) days after this Order becomes final, file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form. Failure to timely file the Final Report of Estate and Motion for Final Decree Closing Case or Motion for Extension of Time to File Report of Estate will result in the imposition of sanctions against the Debtor's counsel, which may include the return of attorney's fees.

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of this order and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.

**DONE AND ORDERED.**