SUNDS DEFIBRATOR AB and Sunds Defibrator Rauma Oy, Plaintiffs–Appellees,

v.

BELOIT CORPORATION, Defendant–Appellant.

Nos. 90–2491, 90–2995.

United States Court of Appeals, Seventh Circuit.

Argued March 5, 1991.

Decided April 18, 1991.

Robert L. Binder, Foley & Lardner, Milwaukee, Wis., John T. Morin, Wormser, Kiely, Galef & Jacobs, New York City, for plaintiffs-appellees.

Andrew O. Riteris, David V. Meany, Kimberly A. Kunz, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge,
POSNER, Circuit Judge, and
ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

This is a suit for breach of contract, brought in federal court under the diversity jurisdiction and governed, with respect to all substantive questions, by the law of Wisconsin. The district judge after a bench trial awarded damages and injunctive relief to the plaintiffs—affiliated Scandinavian corporations that we shall call "Sunds." He also awarded Sunds its reasonable attorney's fees, on the basis of a provision in the contract entitling the victim of a breach to such an award. The defendant, Beloit, appeals from both awards.

We simplify the facts to shorten our opinion. "Pulp washers" are machines used in pulp mills. In 1988 Sunds licensed Beloit to manufacture pulp washers using nonpatented technology that Sunds had developed. The license confined Beloit to North America until 1994, at which time it would be free to sell such washers worldwide. The agreement further provided that neither party was "restricted from exploiting technology or know-how anywhere in the world which one of them develops itself, whether or not based on technology which has entered the public domain." Also that neither party shall "disclose, in any manner, Technical Information received pursuant to this Agreement, ... either directly or indirectly or as the result of visitations at the plants or offices of [either party] to any Person," or "shall ... use any such Technical Information, in any manner, except to the extent necessary to accomplish the purposes of

this Agreement. The prohibition on disclosure does not apply to information lawfully in the public domain."

Shortly after this agreement was made, Beloit began to develop its own pulp washer, and in 1989 it offered to sell one to a pulp mill in Taiwan. Sunds submitted a competing bid, touching off a bidding war that Sunds won when it reduced its price to $900,000 from an original bid of more than $1 million. This suit followed, with Sunds claiming that the pulp washer that Beloit had offered to sell to the mill in Taiwan was in fact the pulp washer that Sunds had licensed it to sell—but until 1994 only in North America, not East Asia.

The district judge noted that there was evidence that Beloit's pulp washer was virtually identical to Sunds'; that it would have taken Beloit between three and five years, and a large capital expenditure, to develop its own pulp washer; and that Beloit was years short of completing any such project when it offered the Taiwanese mill delivery within a year. So it must have intended to make and sell a Sunds washer, not its own washer, and it had therefore violated the contract. The judge awarded Sunds damages of $121,000—the difference between the price at which Sunds could have sold its pulp washer to the Taiwanese mill had it not been for Beloit's bid, which forced Sunds to reduce its own bid, and the lower price at which Sunds sold the pulp washer after lowering its bid. The judge also ordered Beloit to withdraw a number of other bids that it had made to prospective purchasers around the world in violation of the agreement, and awarded Sunds $442,000 in attorney's fees and costs.

Beloit argues that Sunds does not have standing, under Article III of the Constitution, to maintain this suit, because it could not have suffered any injury until and unless Beloit actually sold an infringing pulp washer, which it never succeeded in doing. This is a preposterous argument. Sunds was injured when it had to lower its price to fend off Beloit's bid. Of course if as Beloit also argues the contract forbids it only to manufacture and

deliver infringing washers, and leaves it perfectly free to make offers that it could not make good on without violating the contract, then there was no breach of contract. But that has nothing to do with standing. Whether there was a breach of contract is the issue on the merits. It is enough for standing that the alleged breach injured the plaintiff.

■ Turning, then, to the merits, and beginning with the issue that Beloit erroneously classifies as one of standing, we point out first that the contract forbids any "use" of technical information furnished by Sunds to Beloit other than for the purposes contemplated by the contract and that in using such information to prepare its bid to the Taiwanese pulp mill Beloit was violating this prohibition. Even without an explicit prohibition of any use outside the contract of information supplied by Sunds to enable Beloit to perform the contract, the sort of mischief bid that Beloit submitted, to Sunds' detriment, would have violated the duty of good faith that the common law of Wisconsin reads into contracts. *In re Chayka,* 47 Wis.2d 102, 107 and n. 7, 176 N.W.2d 561, 564 and n. 7 (1970); *Crown Life Ins. Co. v. LaBonte,* 111 Wis.2d 26, 44, 330 N.W.2d 201, 209 (1983). Second, one way of breaking a contract is to repudiate it—to make clear that one does not intend to honor its terms, *Seidling v. Unichem, Inc.,* 52 Wis.2d 552, 554, 191 N.W.2d 205, 207 (1971); *Suburban Beverages, Inc. v. Pabst Brewing Co.,* 462 F.Supp. 1301, 1312 (E.D.Wis.1978)—and Beloit did this by submitting the bid in question. The consequences of this repudiation to Sunds were foreseeable, and so support the award of damages. *Univest Corp. v. General Split Corp.,* 148 Wis.2d 29, 42, 435 N.W.2d 234, 239 (1989).

Beloit argues that the contract left it free to disclose any information that was in the public domain. Insofar as Beloit's bidding documents tracked the sales literature that Sunds distributes to prospective customers without requiring the customer to keep the information in the literature confidential, Beloit was merely disclosing to the Taiwanese pulp mill information already in the public domain. Hence, it concludes, the bid did not violate the contract. An accurate statement would be that the bid did not violate the provision of the contract limiting the disclosure of confidential information. In licensing Beloit to build pulp washers designed by Sunds, Sunds undertook to furnish Beloit with engineering drawings, job cards (which describe the sequence of steps in the manufacturing process), and other design and manufacturing guides that contain trade secrets of Sunds. Naturally it did not want those secrets disclosed any further; hence the provision forbidding Beloit to disclose information received from Sunds unless it is already in the public domain. *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.,* 925 F.2d 174, 177 (7th Cir.1991). But besides protecting trade secrets Sunds also sought in the contract to prevent Beloit from competing with it for five years outside of North America. To this end the contract forbids Beloit to use any of the technical information it obtained from Sunds, other than to fulfill the purposes of the contract, purposes that do *not* include Beloit's competing with Sunds outside of North America. That is precisely the use that Beloit made of the information, and by doing so Beloit violated the contract.

Oddly (it may seem), although the contract permits *disclosure* of any technical information that is lawfully in the public domain, it forbids the *use* of such information whether or not the information is in the public domain, provided only that the information was received directly or indirectly under the contract. The idea, surely, was to simplify litigation—and protect the parties' trade secrets—by excluding the question of trade secrecy as a litigable issue, though if the information in question was not a trade secret the other party might well have received it otherwise than "pursuant to this Agreement." Beloit could disclose information it received pursuant to the agreement, provided the information was in the public domain, but it could not use the information to compete with Sunds outside of the area permitted by the agreement; and that is what it did.

Turning to damages, Beloit complains that there was no direct evidence on what the Taiwanese pulp mill would have paid Sunds had Beloit not submitted its bid; no one from the mill testified. In fact there was plenty of evidence. The request for bids specified a type of pulp washer that only Sunds—and Beloit, under license from Sunds—manufactured, so that Sunds would have faced no competition had Beloit not submitted a bid. Of course, even a monopoly price is not infinite. But there was evidence that the Taiwanese mill had budgeted more than $1 million for the purchase; and while it might still have pleaded poverty or used other tricks of the negotiating trade to try to chivvy down Sunds' bid, the judge was not required to assume that it would have done this or that, if it had, the tactics would have succeeded. The proof of a counterfactual (what would have happened had Beloit not broken the contract) is often difficult, and, within reason, doubts are resolved against the wrongdoer. *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 383 (7th Cir.1986).

Beloit's complaint about the award of attorney's fees is shallow. That the award exceeded the damages is immaterial, since the principal relief sought and obtained was Beloit's withdrawing its other bids, and this relief was worth a good deal more than nothing—indeed a good deal more than $121,000, the amount of damages awarded. It is true that the judge rather arbitrarily lopped off a large portion of the fee award sought. But the only party that has standing—if we may invoke Beloit's favorite doctrine—to complain of that is Sunds, which is not complaining. Assuming that the contractual provision for attorney's fees extends to fees incurred on appeal, Sunds should make application to the district court.

AFFIRMED.