NORTHWESTERN NATIONAL LIFE IN-
SURANCE COMPANY OF MILWAU-
KEE, WISCONSIN, Plaintiff,

v.

Jerry LUTZ, Defendant.

No. 88–3078.

United States District Court,
C.D. Illinois,
Springfield Division.

July 19, 1996.

Charles A. Gilmartin, Harvey R. Herman, Chicago, IL, Richard C. Ninneman, Milwaukee, WI, for plaintiff.

Robert J. Lenz, Bloomington, IL, W. Mark Rasmussen, Peoria, IL, for defendant.

*OPINION*

RICHARD MILLS, District Judge:

Sadly, brawls over attorneys' fees have become a cottage industry.

## I. THE FACTS

This case started in 1988 when Northwestern National Insurance Company (Northwestern) sued Jerry Lutz over a guarantee bond.

In 1986, Lutz invested in a partnership that owned an apartment complex in Texas by making a note to European American Bank. Northwestern issued a bond to guarantee the note. Lutz defaulted on his obligation to the bank and Northwestern had to pay $248,832 on the bond. Northwestern then sued Lutz to make up for the loss.

After a bench trial, the Court concluded that Lutz had only bought one unit of the partnership, but because the note had been altered, Northwestern issued a bond equal to the value of three units of the partnership. After concluding that the note had been altered without Lutz's authorization, the Court awarded Northwestern damages of $129,750.23, the value of one partnership unit plus interest.

In addition to the $129,750.23, Northwestern was entitled to attorneys' fees under its agreement with Lutz. Northwestern submitted bills for over $133,000 from its attorneys. The Court reduced the amount of attorneys' fees to $44,462.78 (one-third of the amount requested) because Northwestern's suit had only been one-third successful (it only recovered for one partnership unit, not the three it claimed).

Both sides appealed. The Court of Appeals affirmed both the judgment and the attorneys' fees. *Northwestern National Insurance Co. of Milwaukee, Wisconsin v. Lutz*, 71 F.3d 671 (7th Cir.1995). Northwestern then returned to this Court to seek attorneys' fees for the appeal. *E.g., Sunds Defibrator AB v. Beloit Corp.*, 930 F.2d 564, 567 (7th Cir.1991). Northwestern also sought to recover the attorneys' fees it had incurred when Lutz filed for bankruptcy after this Court entered judgment.

Unfortunately, nothing seems to generate as much incensed emotion and trauma as the question of attorneys' fees. From the start, the attorneys' fee battles in this case have been no exception. *But see Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("A request for attorney's fees should not result in a second major litigation.").

Northwestern initiated the second attorneys' fee proceeding by filing a two-page motion, which estimated its attorneys' fees and asked for a hearing. Shocked at the amount of attorneys' fees Northwestern claimed, Lutz filed a motion for sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, asserting that the attorneys' fee claim could not possibly be based in fact, and he asked the Court to vacate the earlier judgment in favor of Northwestern to punish it for its frivolous request. The Court denied Lutz's request for relief from the judgment and ordered Northwestern to submit detailed records of its attorneys' fees.

Northwestern complied and submitted records of its attorneys' fees. Northwestern stated that it incurred $84,374 in attorneys' fees for the appeal and $13,645 in the bankruptcy proceedings. In the accompanying memorandum, Northwestern stated that it "does not now claim that it is entitled to all of its appeal fees. Instead, it suggests that the Court apply the same equation that it used at the trial level and award to Northwestern National one-third of its attorney fees on appeal."

Lutz responded to Northwestern's statement of attorneys' fees. He did not, however, make detailed objections to the hourly rates and time entries. Instead, he argued

that the request was just an attempt to recoup Northwestern's loss on the bond under the guise of an attorneys' fee award. He also claimed that Northwestern should only receive attorneys' fees at rates similar to those charged by most central Illinois attorneys and he criticized a few time entries as inherently unreasonable.

 Lutz's first attack on the fee request was insufficient.[1] Courts may not arbitrarily cut the number of requested hours, but must instead reduce the number in a reasoned manner. *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir.1994) ("Counsel who oppose fees have a 'responsibility to state objections with particularity and clarity.'") (quoting *Ohio–Sealy Mattress Manufacturing Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir.1985)). If a defendant fails to specifically object to the requested attorneys' fees, the Court will generally award the requested fees. The Court afforded Lutz an opportunity to make specific objections, which he did. Many of his objections, however, were too vague to support rulings in his favor. The Court found that Northwestern's attorneys' hourly rates were reasonable but reduced the number of hours billed for the appeal by 31.75 hours.[2] Based on these conclusions, the Court awarded Northwestern $39,645.75 in attorneys' fees ($26,000.75 for the appeal and $13,645 for the bankruptcy matter).

Now Northwestern moves for more attorneys' fees: the fees incurred preparing its request for its appellate and bankruptcy fees. Northwestern says that it incurred $14,344 in attorneys' fees and $617.24 in costs.

## II. SECOND–ROUND ATTORNEYS' FEES

Most federal case law regarding attorneys' fee awards arises out of civil rights fee-shifting statutes. To foster consistency, the courts generally apply the same principles to other fee shifting provisions, such as sanctions provisions and contractual clauses. *See Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d 431, 438 (7th Cir.1989). Thus, although this case involves a contractual fee-shifting provision, the Court looks to cases involving fee-shifting statutes for guidance.

 Typically, parties may recover the cost of seeking attorneys' fees as part of their request for attorneys' fees. *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir.1980). But the presumption in favor of awarding the fees expended to recover attorneys' fees dwindles with each repeated stage of an attorneys' fees proceeding. The Seventh Circuit has held that district courts may deny requests for "second-round" attorneys' fees if doing so is justified by the circumstances of a case. *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982).

In *Muscare*, a public employee sued his employer under 42 U.S.C. § 1983. The district court dismissed the complaint but was reversed on appeal. Eventually, the district court granted the plaintiff some relief and awarded attorneys' fees. The defendant appealed the award of fees and the Seventh Circuit reversed with directions to reduce the award. After the district court complied with the mandate, the plaintiff sought more attorneys' fees for the time spent litigating his first claim for fees. Frustrated with the case, the district court denied the request altogether, prompting the plaintiff to appeal again. *Id.* 43–44. The Seventh Circuit affirmed the denial of the plaintiff's request for "second-round" fees. The court stated:

*Eirhart v. Libbey–Owens–Ford Co.*, 996 F.2d 846 (7th Cir.1993) (alterations in original).

---

1. Parties challenging attorneys' fee requests must do so by making specific and supported claims. It is not the obligation of this court to search the record and scrutinize the figures used to calculate attorneys' fees just because a party broadly attacks the veracity of the figures. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 315 (7th Cir.1986) ("When a brief does not ... [state the facts necessary to support a legal claim], the court will not root about in the record in the hope that something will turn up.").

2. The Court found that Northwestern's attorneys' rates were reasonable under the principle that attorneys' fees are awarded based on attorneys' market rates for services. *Balcor Real Estate Holdings, Inc. v. Walentas–Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir.1996) ("[T]he best evidence of the market value of legal services is what people pay for it.")

For rather obvious practical reasons we are loath to disturb a ruling by a district judge on a request for second-round attorneys' fees. The consequence if we should reverse and remand for an award of additional fees is all too predictable: however little the plaintiff is awarded on remand he will move the district court to award him attorneys' fees for the time spent in prosecuting this appeal, and if the district court denies his motion he will be back up here.

*Id.* at 44. Thus, the Seventh Circuit concluded that "the district judge had discretion to deny the plaintiff's second fee request in its entirety. The exercise of discretion ... gives the district judge great leeway. If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation....." *Id.* at 45 (quoting *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir.1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1979)).

## III. NORTHWESTERN'S REQUEST FOR ATTORNEYS' FEES

The instant request is the sort of second-round attorneys' fee request the Seventh Circuit described in *Muscare.* Northwestern's second request for fees, the one relating to appeal and bankruptcy fees, compensated Northwestern for defending its judgment on appeal and for protecting its attorneys' fee award (Northwestern also sought unsuccessfully to improve on the judgment). Northwestern received a large award at that stage mostly because Lutz did not put up much of a fight.[3] Now, Northwestern returns to hopefully recoup even more of its costs, perhaps assuming that it will receive the same favorable response.

The Court concludes that under the circumstances of this case, an additional award of attorneys' fees is not justified. For that reason, the Court denies Northwestern's request.

### A. *General Concerns*

The Court's decision to deny Northwestern's request derives from general concerns about the magnitude of the request and the circumstances of the case. The Court also notes that many individual items in Northwestern's request are unreasonable.

Northwestern claims to have incurred an amount of attorneys' fees for filing its second request for attorneys' fees that exceeds one half of the amount the Court awarded for Northwestern's appeal. An appeal is a challenging legal endeavor. Requesting attorneys' fees is basically a clerical task, which, when feebly resisted, can be done cheaply and quickly. In light of Northwestern's earlier concession that approximately $28,000 was a fair fee for the appeal, Northwestern cannot seriously expect to receive half that simply for printing out billing statements, preparing a few boilerplate affidavits regarding counsels' professional qualifications, and filing a few short memoranda.

The Court also fails to see the need to devote as many partner hours to the largely-clerical task of seeking attorneys' fees. The billing records provided show that Attorney Richard C. Ninneman, a partner in the Milwaukee firm of Quarles and Brady whose billing rate is $265 per hour, spent 41 hours working on the attorneys' fee issue. Two other partners, Andrew M. Barnes and John A. Rothstein, whose billing rates are $250 and $210 per hour respectively, spent 6.3 and .4 hours respectively. James R. Hoy, presumably an associate, whose billing rate is $140 per hour, devoted 13 hours to the fee request. The billing records do not show that any of the work was delegated to paralegals or other staff.

The billing records show that partners spent three and a half times as much time working on this matter as the associate. The partners billed for "office work," "review [of] billing records regarding estimated amounts," transmitting motions to co-counsel for filing, "office work on disbursements and totals for fee request," and so on. This work should have been delegated to a secretary,

---

**3.** The Court allowed six out of seven of the objections it did consider, however, indicating that if Lutz had put up a more strenuous resistance, he might have succeeded in knocking the attorneys' fee award down even further.

paralegal, or law clerk. It is not reasonable for partners, especially ones with high hourly rates, to expect reimbursement for doing so much clerical work.

### B. *Specific Unreasonable Time Entries*

Upon a careful review of the billing records Northwestern offered, the Court notes that the following items are excessive.

1. 1.65 hours to prepare and file Northwestern's two-page initial motion for fees and costs. This motion contained only estimates of the fees and costs sought, and did not comply with the accepted standards for an attorney's fee petition (it did not itemize the attorneys' fees or costs).

2. 4.5 hours to prepare and file a four-page response to Lutz's motion for sanctions and relief from the judgment. Such a document could not reasonably have required 4.5 hours of time to produce.

3. 1.25 hours to prepare and file a motion to extend time to file a proper statement of attorneys' fees and costs. As noted above, Northwestern's original motion did not comply with expectations for attorneys' fees requests. When the Court ordered Northwestern to submit a proper statement, Counsel needed more time, but this is hardly a proper basis for charging $331.25.

4. 1 hour spent by Attorney Ninneman preparing Northwestern's "reply" to Lutz's response to the attorneys' fee petition. This reply consisted of one paragraph stating that counsel was too incensed by what he perceived as a personal insult to respond further.[4] For this, counsel apparently charged his client $265. First, it is unbelievable that it took one hour to prepare this reply. Second, the local rules do not permit replies, and no leave to file one was sought.[5] Third, an attorney's efforts to defend his own professional reputation have no relation to his work on behalf of a particular client and cannot be considered part of the client's reasonable attorneys' fees.

5. 7.5 hours to supplement Northwestern's request for attorneys' fees. The supplement consisted of a one-page motion and three one and a half page affidavits from counsel. The Court simply cannot accept that this work took an entire day. Even if it did, it does not warrant a charge of $1987.50.

6. 15.9 hours to prepare Northwestern's response to Lutz's motion for reconsideration. Northwestern's bankruptcy attorney spent 4.9 hours preparing a response to Lutz's argument regarding this Court's jurisdiction to award attorneys' fees for the bankruptcy matter. This comprises one-half of Northwestern's response. Northwestern's appellate attorney, however, spent 11 hours on his share of the project, which included drafting about four pages of the memorandum and a one page affidavit. The bankruptcy attorney's entries are close to reasonable, but the appellate attorney's entries are not. To spend eleven hours reviewing a file and preparing about five pages of written work is not reasonable.

7. Finally, the entries relating to the actual preparation of the proper attorneys' fee request must be examined. Northwestern's attorneys spent nearly 24 hours preparing the statement of fees and the supporting memorandum.

On April 2, 1996, the Court received a seven-page memorandum in support of the request for attorney's fees, an eight-page affidavit from attorney Ninneman, and eighteen pages of billing records. Spending so much time on these items as Northwestern's attorneys now claim was not reasonable. The time records, eighteen pages of dates, descriptions, and amounts of time, could have been easily and cheaply produced by a secretary or paralegal instead of $250–per–hour attorneys. The affidavit of Attorney Ninneman might have taken an hour to dictate and

---

4. This document stated, in total:

Upon returning from a vacation, the undersigned counsel read with dismay "Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs and Defendant's Request for Sanctions." Suffice the observation that the undersigned counsel, in 35 years of practicing law, has never been the subject of a personal attack such as contained in defendant's motion. The undersigned will not dignify defendant's memorandum with any further response.

5. Local Rule 7.1(B) states "No reply to the opposition shall be filed." CDIL–LR 7.1(b).

edit. The brief, which contains little more than the facts and a recitation of some black-letter law regarding attorney's fee requests, should not have consumed 13 hours of Attorney Hoy's time, not to mention the time Attorney Ninneman spent checking Attorney Hoy's work.

## IV. CONCLUSION

Northwestern's counsel seem to assume that because their client will pay their large bills with little resistance, the Court will award those fees without scrutiny. That assumption is unwarranted, especially at this stage of the proceedings.

In ordinary attorneys' fee proceedings, the Court will award the cost of preparing the attorneys' fee petition. Usually, this is a small amount of the total fee, not, as in this case, one third. Furthermore, the cost is usually included in the petition itself, not saved for later proceedings if the other side puts up too much of a fight about the initial request.

This case does not fall within that norm. A review of Northwestern's supplemental request for attorneys' fees reveals that it is unreasonably large. The request seeks to recover at partners' hourly rates for clerical work and seeks to recover for work not reasonably done in the client's interest.

Granting the request would not serve the interest at stake when a court awards the costs of seeking fees. Instead, granting Northwestern's request would likely draw the proceedings out further, as Northwestern continued to return for more money. The fees already awarded in this case handsomely compensate Northwestern for having to sue Lutz after he breached his agreement. Any further award to Northwestern would be an undeserved benefit and would unjustifiably punish Lutz.

*Ergo,* Northwestern's supplemental motion for costs and more attorneys' fees is DENIED.